# Sloss-Sheffield Steel & Iron Co. *v.* Mobley, Admrx, &c.

*Action by Administratrix to recover Damages for the alleged negligent Killing of Employee.*

1. *Action for death of employee; sufficiency of complaint.*—In an action by an administrator to recover damages for the alleged negligent killing of his intestate, a count of the complaint which ascribes the intestate's death to the negligence of an engineer in charge of an engine, and fails to aver that the engine was on a railway, does not state a cause of action under sub-section 5 of the Employer's Liability Act, (Code, § 1749.)

2. *Same; same.*—In an action by an administrator to recover damages for the death of his intestate who was an employee of the defendant, a count of the complaint which alleges that the injuries resulting in the death of the plaintiff's intestate were caused by reason of defects in the condition of the works, machinery or plant used in the business of the defendant, in that "the engine which was being operated by the defendant upon its said track at the time of the injury complained of, was defective in not having a head light, which defect arose from and had not been discovered or remedied owing to the negligence of the defendant, or of some person in the service of the defendant and entrusted by the defendant with the duty of seeing that the ways, works, machinery or plant were in proper condition," sufficiently states a cause of action.

3. *Liability of employer for defective condition of plant; tools within the provision of Employer's Liability Act.*—An injury resulting to an employee from the negligence of his employer, or of another employe entrusted by the common employer with the duty of seeing that his plant is in proper condition, in not providing suitable tools, implements or appliances, or in allowing such tools, implements or appliances to be in a

[Sloss-Sheffield Steel & Iron Co. v. Mobley, Admrx., &c.]

defective condition, is within the provisions of sub-division 1 of the Employers' Liability Act, (Code, § 1749), which makes an employer liable for the negligence of a co-employee, when the injury is caused by reason of any defect in the condition of the ways, works, machinery or plant connected with or used in the business of the master or employer.—(*Ga. Pac. R. Co. v. Brooks*, 84 Ala. 138; *Birmingham Furnace Co. v. Gross, Admr.*, 97 Ala. 220; *Clements v. A. G. S. R. R. Co.*, 127 Ala. 166; *Southern Railway Co. v. Moore*, 128 Ala. 434, qualified and explained).

4. *Same; same; case at bar.*—A piece of timber commonly used by furnace companies to scotch or chock hot pots and hold them in position on inclined tracks built upon slag piles of such furnace companies, constitutes a part of the plant of such furance companies, within the meaning of sub-division 1 of section 1749 of the Code.

5. *Action for negligent killing of employee; sufficiency of complaint.*—In an action by an administrator to recover damages for the alleged negligent killing of plaintiff's intestate, who was an employee of the defendant, a count of the complaint which avers that the injuries which resulted in the death of the deceased were caused by reason of defects in the works. machinery or plant used in the business of the defendant, in that the railroad track whereon the accident occurred was defective in not having "its cross ties tamped and filled in," etc., is not subject to demurrer upon the grounds that it does not appear that the alleged defect in the track was the proximate cause of the plaintiff's intestate's death, or that it does not appear that defendant was guilty of any negligence of which the plaintiff can complain.

6. *Action against furnace company for negligent killing of employee; admissibility of evidence.*—In an action by an administrator against a furnace company to recover damages for the alleged negligent killing of plaintiff's intestate, who was an employee of the defendant and who at the time of his death was engaged as a switchman in trying to couple a hot pot to an engine owned by the defendant, where the evidence shows that the accident occurred upon a track built on the slag pile, for the purpose of moving hot pots containing molten slack from the furnace to a place where they were dumped, it is not competent for a witness to testify as to whether or not the track on which the intestate was killed "was like the tracks of other well regulated railroads," the track used by the furnace company for the purpose shown,

[Sloss-Sheffield Steel & Iron Co. v. Mobley, Admrx., &c.]

being very different from the track of a railroad company.

7. *Same; same.*—In such a case, it is competent for a witness who was shown to have had many years' experience in moving hot pots from a furnace and was familiar with the work, to testify as to whether it was dangerous or safe to couple the engine and the hot pot in the manner attempted by the intestate at the time of the accident which resulted in his death.

8. *Action to recover damages for death of employee; general affirmative charge.*—In an action by an administrator to recover damages for the alleged negligent killing of his intestate who was an employee of the defendant, where one of the counts ascribes the intestate's death to the negligence of a co-employee who was in charge of the engine, but the evidence shows that every act done by the engineer was characterized by due care and caution and was proper in itself, and was done in compliance with signals from the intestate, the general affirmative charge requested by the defendant as to such count should be given.

9. *Same; same.*—In such a case, where a count of the complaint ascribes the intestate's death to the absence of a head light to the engine, in front of which the intestate was attempting couple a hot pot where the evidence shows that while there was no regular head light on said engine, that there was a torch in front of said engine which gave a better light for the purpose of coupling the engine and hot pot than the regular head light would have given, the general affirmative charge should be given for the defendant at its request as to such count.

10. *Same; same.*—In such a case, where the negligence complained of was that there was not a proper chock for scotching the wheels of the hot pot, and there was evidence tending to show that the proper chock for such purpose would be long enough to rest on both rails of the track against the wheels of the hot pot, and that a chock not of such length, but sufficiently long to rest on one rail against a wheel is inadequate, and there was some evidence tending to show that the defendant supplied chocks of this short and inadequate character, the general affirmative charge requested by the defendant as to this count is properly refused.

APPEAL from the Circuit Court of Lauderdale.

Tried before the Hon. ED. B. ALMON.

This action was brought by Beulah Mobley, administratrix of the estate of Joseph P. Mobley, deceased,

against the Sloss-Sheffield Steel & Iron Company, to recover damages for the alleged negligent injury to plaintiff's intestate, which resulted in his death.

The complaint as originally filed contained only three counts. Subsequently the 6th, 6th and 7th counts were added by amendment. The first count was framed under the common law for death by wrongful act, and the 2d count was framed under sub-division one of the Employer's Liability Act, Code, § 1749. The 2d count was withdrawn by the plaintiff, and the court, at the written request of the defendant, instructed the jury that the plaintiff could not recover under the first count of the complaint. There was, therefore, left in the complaint, the 3d, 5th, 6th and 7th counts. There was no count numbered 4. The 3d count was in words and figures as follows: "3d. The plaintiff claims of the defendant the sum of nineteen hundred and ninety-nine dollars, as damages for the negligent killing of her intestate, Joseph P. Mobley. And plaintiff alleges that on or about the 8th day of April, 1900, the defendant by its agents and servants was engaged in operating a blast furnace near the city of Florence, Alabama, and that in connection therewith and accessory thereto the defendant was at said time operating locomotive and switch engines in the handling of material for and the products of said furnace. Plaintiff alleges that on said day the said Joseph P. Mobley was in the employment of the defendant working in the capacity of a switchman or brakeman. And plaintiff alleges that while he was so employed and while he was in the active discharge of his duties as such switchman, he was caught between one of the defendant's switch engines and a hot pot and was crushed and mangled so that he died. And plaintiff alleges that the injuries from which the said Joseph P. Mobley died resulted from and were caused by the negligence of one John Williams who was also working for the defendant in the capacity of a locomotive engineer, and who had charge or control of the said switch engine which caught and crushed the plaintiff's intestate as aforesaid, from which injuries he died, to plaintiff's

damage as aforesaid, wherefore she brings this suit."

The 5th count, after containing the same averments as the 3d, as to the operation by the defendant of locomotives and switch engines, and as to the capacity in which the plaintiff worked, and as to his having been caught between one of the switch engines and the hot pot and crushed to death, then avers the negligence complained of as follows: "Which injuries were caused by reason of defects in the condition of the works, machinery or plant used in the business of the defendant as aforesaid, which defects consisted in this: The engine which was being operated by the defendant upon its said track at the time of the injury complained of was defective in not having a head light, which defect arose from and had not been discovered or remedied owing to the negligence of the defendant or of some person in the service of the defendant intrusted by the defendant with the duty of seeing that the ways, works and machinery or plant were in proper condition."

The 6th count, after the same prefatory averments, charges the negligence complained of as follows: "Which injuries were caused by reason of defects in the condition of the works, machinery or plant used in the business of the defendant as aforesaid, which defect consisted in this: The chock which was used by the defendant at the time of said injury to scotch a hot pot which was used by the defendant, and on to which said defendant was endeavoring to couple its said switch engine, was defective, which defect arose from and had not been discovered or remedied owing to the negligence of the defendant, or of some person in the service of the defendant and entrusted by the defendant with the duty of seeing that the ways, works and machinery or plant were in proper condition."

The 7th count, after the same prefatory averments, charges the negligence complained of as follows: "which injuries were caused by reason of defects in the condition of the works, machinery or plant used in the business of the defendant as aforesaid, which defect consisted in this: The track which was then and there used by the defendant and upon which said switch engine

and hot pot were being operated was defective in not having the crossties tamped and filled in, which defect arose from and had not been discovered or remedied owing to the negligence of the defendant or of some person in the service of the defendant, and entrusted by the defendant with the duty of seeing that the ways, works and machinery or plant were in proper condition."

To the 5th count of the complaint the defendant demurred upon the following grounds: "1. It does not appear therefrom that the alleged defect in said engine was the proximate cause of the intestate's death. 2. It does not appear therefrom that defendant was guilty of any negligence of which said plaintiff can complain."

The defendant demurred to the 6th count of the complaint upon the following grounds. 1. "It does not appear therefrom that the alleged defect in said chock was the proximate cause of intestate's death." 2. "It does not appear therefrom that the defendant was guilty of any negligence of which said plaintiff can complain." 3. "The defect complained of does not constitute a part of the works, machinery or plant used in the business of the defendant, within the purview of sub-division one of section 1749 of the Code of 1896."

To the 7th count of the complaint the defendant demurred upon the following grounds: 1. "It does not appear therefrom that the alleged defect in said track was the proximate cause of plaintiff's intestate's death." 2. "It does not appear therefrom that the defendant was guilty of any negligence of which plaintiff can complain." These demurrers were overruled.

The defendant pleaded not guilty and several special pleas, but it is unnecessary, under the opinion on the present appeal, to set out at length these special pleas.

On the trial of the case, it was shown that plaintiff's intestate was a man of 28 years of age, was an experienced switchman and was in the employment of the defendant at its blast furnace at Florence, Alabama, in the capacity of a switchman, and was killed in an attempt to couple an engine to a hot pot on the inclined

track upon the defendant's slag pile. It was further shown that the hot pot was an iron pot weighing between five and ten tons, placed on tracks, and is used for the purpose of transporting molten slag from the furnace to the slag pile; that these hot pots are constructed without brakes; that in moving them they are coupled to a locomotive engine, and by that means are propelled along the tracks between the furnace and the slag pile; that being without brakes, they are made stationary when on the inclined track, by placing a piece of wood or plank, commonly called a chock, under the wheels; that it is the duty of the switchman to chock the hot pot with these pieces of wood or plank, and when not properly chocked the hot pot will run of its own momentum down the inclined track. It was further shown that at the time of the accident, which resulted in the death of plaintiff's intestate, he was trying to couple one of these hot pots to an engine; that in doing this he gave signals to the engineer about the movement of the engine, which were obeyed by the engineer, and that getting between the hot pot and the engine, he was crushed to death. There was evidence tending to show that in trying to make the coupling, the chock which was used was knocked from under the wheels, and the hot pot commenced to roll down the inclined track of its own momentum; that the plaintiff's intestate was walking in front of the hot pot, holding up a coupling draw bar, for the purpose of making the coupling.

During the examination of M. J. Mobley, the father of the plaintiff's intestate, he testified that he had had many years' experience upon railroads, and had observed the condition of the tracks of well regulated railroads, and knew how they were kept. Thereupon, the witness was asked to state whether or not the track where the plaintiff's intestate was killed was built like the tracks of other well regulated railroads. The defendant objected to this question upon the ground that it called for immaterial, incompetent and illegal evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness answering

that the track was not like the track of other well regu-
lated railroads, the defendant moved to exclude said
answer, upon the same ground.. The court overruled
the motion, and the defendant duly excepted.

On the examination of Joe West as a witness for the
plaintiff, he testified that the hot pot when first struck
by the engine moved as much as a half foot or a foot;
that if the chock was under the front wheel on the side
where the deceased was standing when he signalled to
the engineer to come back, there was nothing to prevent
the deceased from seeing whether or not the chock was
out of place when he signalled the engineer to come
back; that the track upon which the deceased was killed
was a new track and had been filled in "pretty level" at
the place where the accident occurred; that the deceased
was familiar with the hot pots and the coupling of them
to the engine. After the witness having further testi-
fied that he had many year's experience in working
about furnaces and hot pots, and was familiar with the
work of moving the hot pots, he was asked by the de-
fendant to "state whether or not it is dangerous or safe
to attempt to couple an engine and a hot pot together,
when the draw bar is in the hot pot and not in the en-
gine, on an inclined track?" The plaintiff objected to
this question, the court sustained the objection, and the
defendant duly excepted. The other facts of the case
necessary to an understanding of the decision on the
present appeal, are sufficiently stated in the opinion.

There were verdict and judgment for the plaintiff.
The defendant appeals, and assigns as error the several
rulings of the trial court to which exceptions were re-
served.

BRADLEY & MORROW, for appellant.—The third count
of the complaint did not state a cause of action at com-
mon law or under the Employer's Liability Act.—2 Bai-
ley's Personal Injuries, § 1800, et seq.; Railroad Co. v.
Thomas, 42 Ala. 721; Railroad Co. v. Smoot, 67 Ala. 13;
Whatley v. Zenida Coal Co., 122 Ala. 118.

The defect complained of in the 6th count, in that

there was not a proper chock, does not constitute a defect in the ways, works, machinery or plant, within the meaning of sub-division 1 of the Employer's Liability Act.—Code, § 1749; *Clements v. A. G. S. R. R. Co.,* 127 Ala. 166; *Southern R. Co. v. Moore,* 128 Ala. 434; *Ga. Pac. R. Co. v. Brooks,* 84 Ala. 138.

Where blocks of wood necessary to doing of certain work can be picked up around the shop, the failure of the master to furnish them, do not render him liable. *Robinson v. Blake Manfg. Co.,* 143 Mass. 528.

Appellant asked appellee's witness to state whether it was "dangerous or safe to attempt to couple an engine or hot-pot together when the draw bar is in the hot-pot and not in the engine on the inclined track." Witness had worked a number of years at various furnaces and was familiar with work of that kind. The question is based on the facts in the case and appellant should have been allowed the benefit of his testimony on this point. *Warden v. L. & N. R. R. Co.,* 94 Ala. 286; *Schlaff v. L. & N. R. R. Co.,* 100 Ala. 377.

A. H. CARMICHAEL, *contra.*—Numerous adjudications of this court support the view that under our system of pleading very general averments, little short indeed of mere conclusions of a want of care and consequent injury, leaving out the facts which go to prove negligence, is all that the law requires.—*Ga. Pac. R. R. Co. v. Davis,* 92 Ala. 300; *E. T., V. & G. R. R. Co. v. Watson,* 90 Ala. 41. The third, fifth, sixth and seventh counts of the complaint are sufficient. The *quo modo* of the negligence need not be stated.—*Railway Co. v. Crenshaw,* 65 Ala. 566; *Leach v. Bush,* 57 Ala. 145; *Woodward Iron Co. v. Herndon, Admr.,* 114 Ala. 191.

McCLELLAN, C. J.—The case is to be considered here as if tried below on the 3d, 5th, 6th and 7th counts of the complaint.

The 3d count ascribes intestate's death to the negligence of an engineer in charge of an engine, but it does not aver that the engine was on a railway. This fact is

essential to a cause of action under sub-section 5 of section 1749 of the Code.—*Whatley v. Zenida Coal Co.*, 122 Ala. 118. The allegation of the count may afford ground for an inference that the engine was on a railway in that it is referred to as a "switch engine," and it is said that defendant was there operating locomotives and switch engines in the handling of material, etc., but essential facts of this character cannot be left to inference and conjecture in a complaint. The court erred in overruling defendant's demurrer to this count. The other ground of demurrer to the third count, that it did not specify the alleged negligence of the engineer, was without merit.

The 5th count sufficiently states a cause of action, and the demurrer to it was properly overruled.

The demurrer to the 6th count presents an important question and one which involves some difficulty. It is whether pieces of timber commonly used by furnace companies to scotch or chock hot-pots and hold them in position on inclined tracks on slag piles, while they cool, are any part of the "ways, works, machinery, or plant connected with or used in the business of" such companies, within the meaning of clause 1 of section 1749 of the Code. In *Ga. Pac. Ry. Co. v. Brooks*, 84 Ala. 138, it seems to have been assumed that a hammer used in driving spikes into cross-ties to secure and hold the rails of a railway, was not a part of the ways, works, or plant of the railway company, and it was *decided* such hammer was not *machinery* within the meaning of the statute. This *decision* is undoubtedly sound; but it is not so clear that the apparent assumption referred to is warranted. This hammer, according to the authorities, was no part of the "ways" of the defendant company, nor of its "works," but may it not have been "plant" within the meaning of the statute? In *Birmingham Furnace & Manufacturing Co. v. Gross, Admr.*, 97 Ala. 220, 229, it is in effect declared that *a failure* to furnish proper tools and instruments for doing the work in hand does not constitute a defect in the ways, works, machinery or plant of the employer, and it

was there *held* that the furnishing of a ladder for a
workman to stand upon while making repairs, where
the erection of a temporary scaffold to that end would
have more certainly conserved his safety, entailed no
liability on the employer under the statute as for a de-
fect in the condition of the ways, works, machinery, or
plant of the defendant; the ladder having fallen and the
workman having been injured in consequence.   So in
*Clements v. Ala. Gr. So. R. R. Co.,* 127 Ala. 166, it was
declared that a steel bar used in prizing up rails on the
employer's track, "being disconnected from any other
mechanical appliances, and operated simply by muscu-
lar strength directly applied, is not machinery in the
meaning of the statute."   It seems to have been as-
sumed in this case, as in *Ga. Pac. Ry. Co. v. Brooks,*
*supra,* that the implement in question was not a part
of the ways, works or plant of the defendant, but noth-
ing is said in the opinion to that effect.   A later expres-
sion is found in *Southern Railway Co. v. Moore,* 128
Ala. 434, 450.   The article involved there was a rope
used in lowering heavy timbers into place in the con-
struction of a bridge.   This court said in respect of a
count of the complaint ascribing plaintiff's injuries to
a defect in this rope that   *   *   "the rope as used on the
occasion of the plaintiff's injuries was not a part of the
ways, works, machinery or plant of the defendant, and
the demurrer to the count of the complaint. which
averred a defect in the rope, etc., as the cause of the in-
jury, should have been sustained."   So far as these sev-
eral cases may be taken as declaring that the tools, im-
plements and appliances referred to constituted no part
of the *plant* connected with, or used in the business of
the defendants in them respectively, within the mean-
ing of the statute, their soundness is very questionable.
The doctrine of general acceptance in other jurisdic-
tions is that the statute term "plant" comprises what-
ever apparatus, fixtures, or tools a master uses in his
business.—Dresser's Employer's Liability, § 48.   Thus
it has been adjudged in England and Scotland that a
horse used in the business of the master is "plant" and
that viciousness of disposition is a "defect in the condi-

tion" of such plant. In the English case the court said:
"'Plant,' in its ordinary sense, includes whatever appa-
ratus is used by a business man for carrying on his
business,—not his stock in trade, which he buys or
buys or makes for sale,—but all goods or chattels, fixed
or movable, live or dead, which he keeps for permanent
employment in his business."—*Yarmouth v. France*, 19
*Q. B. Div.* 645; s. c. *Eng. Ruling Cas.* 217; *Houston v.
Edinburg St. Tramways Co.* 14 Rettie Ct. Sess. Cas.
621. The Supreme Court of Georgia defines "plant" as
meaning fixtures and tools necessary to carry on any
trade or mechanical business.—*Liberty County L. & L.
Co. v. Barnes*, 77 Ga. 748. "Small tools and appliances"
says Mr. Dresser, "are included within its meaning,' in-
stancing ladders, and citing *Weblin v. Ballard*, 13 Q. B.
Div. 122, and *Cripps v. Judge*, 13 Q. B. Div. 583. The
supplying and keeping in proper condition of tools, im-
plements and appliances necessary and reasonably ad-
equate to the carrying on of his business is the duty of
the employer at common law. The prime purpose of
our statute is in no sense to restrict this duty or liabil-
ity for the consequences of its pretermission, but to ob-
viate all doubt and question there might be as to the
existence of the liability in respect of an injured em-
ploye when the duty had been devolved upon another
employe and been negelected by him. The purpose in
the main, in other words, was and is to eliminate the
doctrine of fellow servants, and to leave no doubt that
the employer is liable in the cases set down in the stat-
ute to an employe, for injuries resulting from the negli-
gence of a fellow servant as if the injured employe were
a stranger. These considerations, it seems to us, en-
force the conclusion that any injury resulting to an
employe from the negligence of the employer, or of an-
other employe intrusted by the common master with
the duty of seeing that his plant is in proper condition,
in not providing suitable tools, implements or appli-
ances, or in allowing such tools, implements or appli-
ances to be in a defective condition, is within the stat-
ute. Whether there may be a distinction in this con-

nection between tools and appliances used in the repair of the ways, works or manchinery, and the tools, implements and appliances used in the regular prosecution of the business of the emplo̒yer—whether a hammer, crow-bar or rope used in the work of repairing the track of a railway may not be "plant connected with, or used in the business" of a railway company, while chock blocks of constant necessary use in the regular business of a furnace company to hold its slag cars—hot-pots—in place on inclined tracks while they cool, are to be considered as a part of the plant—we need not decide in this case, though it would seem there is little basis for such a distinction.  Be that as it may, however, we are satisfied on principle and authority, that the chocks referred to in the 6th count constituted a part of the "plant" of the defedant company, as that term is used in the statute.  The demurrer to that count predicated as it was, on the contrary theory, was properly overruled.

The 7th count ascribes intestate's injury and death to defects in the condition of defendant's *works, machinery or plant*, and then particularizes only defects in defendant's ways; but this point of objection is not taken by the demurrer.  The grounds which were assigned were not well taken.

The first plea interposed, "not guilty," is the only proper general traverse of a complaint in this class of actions.  The second and third pleas were improper and redundant.—Code, § 3295.  The court did not err in striking them.

Pleas 4, 5 and 6 were interposed to counts one and two, which, as we have said, are not to be considered as having been in the case at the trial.  It is unnecessary, therefore, to review the trial court's rulings on the demurrers to those pleas.

Demurrers were sustained to a number of pleas which undertook to set up contributory negligence.  These pleas were each either abstractly insufficient or they were had for that they severally purported to answer all the counts of the complaint and in point of fact did not do so.  Moreover, other pleas of contributory negligence

remained in the case under which it was open to the defendant to prove this defense in every aspect. There is equally no occasion to discuss these pleas in detail.

The objection of the defendant to the testimony of the witness M. J Mobley, to the effect that he was familiar with the tracks of the Georgia Pacific and other well regulated railroads, and that the cinder track on which the intestate was killed, "was not like the tracks of other well regulated railroads," should have been sustained. The track used by a furnace company to transport and dump slag on its cinder pile by means of hot-pots and switch engines, is a very different thing from the track of a railroad company. It is short. It is not used to carry passengers or the property of others. The weight it has to bear is not comparable to the weight constantly borne by the tracks of railroads which are common carriers, nor is the speed of vehicles upon it anything like that necessary in trains upon regular railroads. It need not, therefore, be so heavily or strongly constructed. It generally involves a grade which would be inadmissible in ordinary railroads. It might well be better constructed for the uses to which it is to be put than an ordinary railroad track, and yet not be so well constructed in a general sense as such track. It might even be better constructed in a general sense than the usual track of a well constructed railroad, and yet not be like the track of well regulated railroads. The track of a well-regulated cross-country railroad furnished no standard of comparison, and no criterion of excellence as to a furnace company's tracks laid on its cinder pile for the sole purpose of carting off the slag from the furnace. The fact that such cinder tracks are not like the tracks of well regulated cross-country railroads is not pertinent to the issue whether the cinder tracks are defectively constructed, and throws no legitimate light upon it. Of course, they are not constructed, and have no need to be constructed and maintained, like the tracks of railroads generally.

The witness, Joe West, had had many years experience in moving hot-pots about a furnace and was familiar with the work. It was shown that hot-pots were

moved by coupling a locomotive to them. He should have been allowed to testify "whether it was dangerous or safe to attempt to couple an engine and a hot-pot together when the draw-bar is in the hot-pot and not in the engine, on an incline track."

The other exceptions to rulings on the admissibility of testimony are without merit.

Charge 2, requested by the defendant, viz: "If you believe the evidence in this case, plaintiff cannot recover under the third count of the complaint," should have been given. This count avers that "the injuries from which the said Joseph P. Mobley (the intestate) directly resulted from and was caused by the negligence of one John Williams, who was also working for the defendant in the capacity of locomotive engineer, and who had charge and control of said switch engine which caught and crushed the plaintiff as aforesaid," etc., etc. We will not set out here the evidence as to the conduct of the engineer on the occasion in question. It will suffice to say, that it is free from conflict to show that every act done by the engineer in the premises was characterized by due care and caution, that each was a proper act in itself, and, moreover, that each was done in careful compliance with signals given by Mobley himself, which it was the engineer's duty to comply with, and, finally, that there is not a scintilla of evidence tending to show the omission of proper action on his part.

The affirmative charge requested by defendant as to the 5th count of the complaint should also have been given. That count ascribes Mobley's death to the absence of a head light from the engine, to the front of which he, in the night time, was attempting to couple a hot-pot. It was shown on the trial that the regular head-light of the engine—the lamp which sits in a frame or glass inclosure, high up in front of the engine before a concave reflector—was absent on the occasion of the accident. But the uncontroverted evidence was that a torch was placed in front of and outside the glass door of this recess, that this torch was burning at the time and that it gave a better light for Mobley's purpose—the coupling together of the engine and hot-pot—than the

regular headlight would have given, for the reason that the light of the torch was upon the drawhead of the engine and upon the track immediately in front of the engine with which Mobley was concerned, whereas the rays of the regular headlight would have passed above the drawhead and the immediate track. We say that this evidence was uncontroverted having in mind the statement of one of plaintiff's witnesses that there was no light on the front of the engine when he arrived on the scene sometime—probable a half hour—after the accident, for we do not regard this testimony as being in conflict with the positive statements of all the witnesses who were present at the time of the accident, witnesses called both by the plaintiff and defendant, that the torch was there and gave a better light for the business Mobley had in hand than the regular headlight would have given. It was also shown without conflict that there was another torch on the running board beside the boiler, that Mobley himself had a lighted lantern, and that he knew at all times pending the attempt he was making the precise position of the engine, the drawbar, and the hot-pot. Upon these considerations, we rest our conclusions that there was no evidence tending to support the 5th count in respect of its essential averment that the defect it specifies caused the death of plaintiff's intestate, and that on the case presented by that count the affirmative charge should have been given for the defendant.

There was some evidence tending to show that the proper chock for scotching the wheels of hot-pots on these cinder tracks is a piece of plank or other timber sufficiently long to rest on both rails of the track and against a wheel on each, that a chock not of this length, but sufficiently long to rest on one rail against a wheel is an unadapted, inadequate and, in that sense, a defective chock, for that when the engine comes against the hot-pot for the purpose of being coupled to it, the effect is to release the chock from the bite of the wheel, so that it will fall off the rail and leave nothing to prevent the hot-pot from running down the incline, if there should be a failure to effect the coupling, as sometimes

happens, whereas the chock extending across both rails would remain in place under these circumstances, and prevent the hot-pot running down the track. There was also some evidence tending to show that the defendant supplied chocks of this short and inadequate variety, and it was open to inference by the jury, that is, there was enough evidence to carry the question to the jury, that the use of this short chock was the cause of the injury and death of the intestate. On this state of the case, we cannot say the court erred in refusing to give the affirmative charge requested by the defendant as to the 6th count.

On another trial, with the testimony of M. J. Mobley, as to this cinder track being not like the tracks of regular, cross-country roads, excluded, and the other evidence as to the structure and condition of the track where the accident occurred the same as on the trial under review, it will be a question for the jury whether the track was in a defective condition, and whether such condition, if they find it to have existed, was the proximate cause of Mobley's death. Of course, if it shall appear that this condition had existed for some time to Mobley's knowledge, that it was a defective condition with reference to the safety of switchmen attempting to couple engines and hot-pots on the track, and thus to the apprehension of a man of ordinary care and prudence, and he continued in the work of coupling there without giving notice of the defect and being recently assured that it would be remedied, he is to be held to have assumed the risk incident to it.

We are not prepared to say as matter of law that the evidence showed that Mobley was guilty of contributory negligence which would bar a recovery under counts 6 and 7. Therefore, in our opinion, the affirmative charge upon the whole complaint was properly refused, there being, as we have seen, evidence to go to the jury under the 6th and 7th counts.

The foregoing opinion will suffice for the purpose of another trial, and we will not prolong it by entering upon a consideration of the numerous exceptions relating to the charges.

Reversed and remanded.