# Going, *pro ami v.* Alabama Steel & Wire Co.

```
141  537
141  490
141  537
144  156
```

## *Action for Personal Injuries.*

1. *Demurrer; when ruling on, will not be revised.*—When the facts in the case, negative the material averments in certain counts of a complaint, the ruling of the trial court sustaining demurr- ers to these counts, whether erroneous or not, involve no in- jury to the plaintiff.

2. *Defect in plant; what sufficient to. make out a prima facie cause of action for.*—In an action to recover damages for personal injuries alleged in the complaint to have resulted from the negligence of defendant in not supplying proper appliances for operating its plant, where the injury is shown to have been inflicted by a drill press, of which the plaintiff, was in charge, and was using, and the proper way to stop the machine, when necessary, was to shift the belting which operated it from the pulley fixed to a shaft, which gave motion to the machine, on to a loose pulley on the same shaft; and it is further shown that to prevent the belt from slipping back on to the fixed pulley, it was necessary to insert a small flat stick between the peg on the shifter and the body of the press; and that if prop- erly notched and the notch fitting around the peg the stick would safely secure the belting on the loose pulley, and without the notch it was liable to be shaken out of position by the vi- bration of the machine, and allow the machine to start sud- denly; and there is evidence tending to show that the stick furnished was not notched, and after being used by the plain- tiff was shaken out of place, suddenly, starting the machine, which cut off plaintiff's finger, a sufficient *prima facie* cause of action is shown; the unfitness and inadequacy of the stick supplied, constituting a defect in defendant's plant.

3. *Plant of defendant; what appliance part of.*—In such a case, the appliance for securing the belting, although nothing but a flat stick, was a part of the plant of defendant, and if inade- quate to the end for which it was to be employed, was a defect in the defendant's plant; and the duty of supplying a proper appliance being upon the defendant, and the fact that only this defective appliance was at hand, establishing a *prima facie* case of negligence on defendant's part.

[Going v. Alabama Steel & Wire Co.]

4. *General issue; when proper for the determination of jury.*—In an action to recover damages for personal injuries, alleged in the complaint to have resulted from the negligence of defendant in not supplying proper appliances for operating its plant, where there is evidence tending to show a defect in the plant of defendant, and that the defendant was negligent in not supplying proper appliances for plaintiff to operate its machine, and also evidence tending to show that the injury complained of. was not caused by such defect, the general issue is for the determination of the jury, and the general affirmative charge should not be given at the request of defendant.

5. *Contributory negligence; when proper matter for jury.*—It cannot be affirmed, as matter of law. that an employee, who is injured while operating a machine in his employer's plant, is guilty of contributory negligence in using a defective appliance furnished him by his employer, even though it appears, that to his knowledge, this sort of appliance had failed on one or two occasions, to accomplish the end its use was intended to effect; since being furnished the appliance by his employer for the particular use, and the employer being negligent in furnishing such defective appliance, or in not supplying a proper one, it is a question for the jury, under all the cirumstances to say whether his use of the appliance was negligent.

6. *Assumption of risk; when question for the jury.*—In an action to recover damages for personal injuries, alleged in the complaint to have resulted from the negligence of defendant in not supplying proper appliances for operating its plant, when there is evidence tending to show that the superintendent of defendant was informed, that, by reason of the ·defective appliance supplied, the machine would suddenly start when not so intended, and promised to have it fixed, and there is a denial of such information and promise, it is for the jury to say whether or not the plaintiff assumed the risk of injury by using the machine with its defective appliance up to the time of the injury; it being shown that injury to plaintiff was caused by said machine starting suddenly, when plaintiff did not so intend.

7. *Plea; how objection must be raised.*—In a suit to recover damages for personal injuries, when a plea alleges facts which are appropriate to a plea of assumption of risk, but which are not apt in a plea of contributory negligence, which is the conclusion drawn from the facts stated, such defect must be pointed out by a demurrer, specially raising that point.

[Going v. Alabama Steel & Wire Co.]

8. *Plea; what sufficient allegation in.*—Where a plea alleges "that the plaintiff was guilty of negligence, which contributed to his alleged injury, in this, that the plaintiff negligently remained in the service of defendant, in the operation and direction of said machinery, with a full knowledge of the facts and conditions therein alleged, for an unreasonable length of time," and the facts alleged in the complaint embrace both the inadequacy of the appliance and the dangerous consequences of using it, the averment of the plea is in substance that the plaintiff knew of the danger of the situation, and the further averment, that with such knowledge he remained at work for an unreasonable length of time, is equivalent to saying that a reasonable man, i. e., a man of ordinary care and prudence, would not have so remained.

9. *Evidence; when dismembered portion of finger admissible.*—In an action by an employee against his employer to recover damages for having his finger cut or mashed off while operating one of defendent's machines, where the plaintiff testified that his accident occurred in a way different from that shown by defendant's testimony, and further testified as to appearance of the severed part of the finger, if it is made to appear that the severance of a finger in the way testified to by the plaintiff, would leave the severed part in a certain condition, or of a certain aspect differing from the condition or aspect of the part, if cut or mashed off by the point of the drill, the dismembered part should be received in evidence.

10. *Different appliance; use of after accident, when evidence of use after accident inadmissible.*—The use of a different appliance upon machinery after an accident caused by an alleged defective appliance, cannot be shown as an independent fact, to prove negligence in the use of the appliance.

11. *Same; when admissible.*—If a witness testifies on his direct examination that the appliance used was safe, he may be asked, on cross examination, for the purpose of abating the probative force and value of his opinion, whether he has not subsequent to the accident substituted another appliance.

12. *Defective appliance; effect of evidence of use of same or similar appliances by other persons in well regulated shops.*—While a defendant, charged with negligence in the use of a defective appliance, may, for the purpose of rebutting the presumption of negligence from the use of the appliance, show that the same or similar appliances are used by other persons, in well regulated shops, yet such use by others is not conclusive of the question of negligence, *vel non*, in the use of the particular appliance in question.

13. *Charge; what improper.*—A charge which assumes facts which must appear from the evidence, is bad.

14. *Same; verbiage of, criticised.*—The employment of the word "probable" in a charge in a civil case, is not commendable. The hypothesis should be upon the "reasonable satisfaction" of the jury, or, "if the jury are reasonably satisfied."

APPEAL from Birmingham City Court.

Tried before the Hon. CHARLES A. SENN.

This action was brought by the appellant, Howard Going, by his next friend, against the appellee, to recover damages for personal injuries.

The complaint contained four counts marked, respectively, "A," "B," "C" and "D." Count "A" averred that on the 21st day of April, 1900, defendant was engaged in operating a rod and wire mill for the manufacture of wire nails, etc., near Ensley, Ala., and in said mill the process of drilling iron and steel by certain machinery was conducted by defendant, which said work when done by an inexperienced and youthful workman, without due warnings and instructions, was dangerous, and plaintiff avers that defendant, knowing his tender age and inexperience, and the danger to him of such position by reason thereof, employed plaintiff at work in drilling in said mill as aforesaid, and negligently failed to give plaintiff, who was, to-wit, only fifteen years old, reasonable instructions and warnings concerning the work and danger aforesaid, by reason of which said negligence of the defendant, plaintiff's right forefinger was caught in said machinery which he was operating as aforesaid, on to-wit, the 21st day of April, 1900, and cut off.

Count "B," after averring the business of the defendant, alleged that "Plaintiff while employed in the business of defendant in said mill was injured by having his right forefinger caught and cut off by a drilling machine which he was operating in the course of his duties under such employment. And plaintiff avers that the machinery which he was operating as aforesaid was defective, hazardous and dangerous to the plaintiff and exposed the plaintiff, who was young and inexperienced in said work, and by reason thereof, did not realize said danger to probable injury, and likeliness to receive such an in-

jury as he did receive, and plaintiff avers that such injury was caused as aforesaid by reason of the wanton and reckless negligence of defendant in causing plaintiff to work at said defective, dangerous and hazardous machine, as aforesaid, without giving warnings or instructions concerning the said danger and with full knowledge on the part of defendant of said dangerous, defective and hazardous condition to plaintiff of said machine, and full knowledge of plaintiff's youth and inexperience, and the further knowledge that plaintiff would likely receive such an injury as he did receive."

Count "C" averred that "Plaintiff was in the employment of defendant engaged in drilling iron and steel in said shop by means of a machine operated by steam power, and in doing so he was required to use drilling machinery run by steam power, belting, pulleys and shaftings, and the belting which ran the machine which plaintiff was operating was controlled by an instrument, to-wit, a shifter attached to and forming a part of said machinery. And plaintiff avers that for the controlling and holding in place of said instrument or shifter, defendant used a small piece of wood or stick which was liable to shake out of place, and let the machine suddenly start to running. And plaintiff avers that he was young and inexperienced with said machinery, all of which including knowledge of the use of said stick or piece of wood and its liability to get out of place and improperly start the machinery, was known to F. B. Leonard, a foreman or superintendent of defendant over plaintiff in said mill. And plaintiff avers that said injury was the proximate consequence, and by reason of the said negligence of said F. B. Leonard, a person in the service or employment of defendant, who had superintendence intrusted to him whilst in the exercise of such superintendence, in that, the said F. B. Leonard, with knowledge of all the facts and circumstances aforesaid, negligently set or continued plaintiff at work under said circumstances as aforesaid, by reason of which said negligence of said F. B. Leonard, plaintiff was injured as aforesaid.

The averments of negligence in count "D" are sufficiently shown in the opinion.

Demurrers were filed to the first three counts of the complaint, and were sustained in the trial court. On this appeal, the court holding that there was no evidence to support the allegations of these three counts, does not review the rulings of the city court on the demurrers, and consequently the demurrers are not set out.

The pleas were the general issue, contributory negligence and assumption of risk by the plaintiff. A plea numbered 10 was filed specially to count "D," and was as follows: "And defendant says that the plaintiff was guilty of negligence which proximately contributed to his alleged injuries, in this, that plaintiff negligently remained in the service of defendant in the operation or direction of said machinery with full knowledge of the facts and conditions therein alleged for an unreasonable length of time."

This plea was demurred to on the following grounds: 1st. Because it fails to allege that the plaintiff remained in the said service as aforesaid with knowledge of his danger; and 2d. Because the said plea fails to allege that the danger of remaining in said service under said condition was so great that a person of ordinary prudence would not have done so. This demurrer was overruled by the trial court.

The plaintiff was examined as a witness in his own behalf, and testified that he was fifteen years old at the time of the injury; that when he was hurt he had stopped the machine and put plain stick in the machine; that he laid the piece of stick between the notch and the peg on the shifter and stopped the machine, and went to take the drill out to sharpen it, and as he went to knock it out the machine started and caught his hand in the drill and cut his right forefinger off between the first and second joints; that the machine was started by the stick, which was plain and about three inches long, falling out; that the jar of the machine would sometimes shake the stick out and start the machine; that when the stick staid in, the belt would stay on the loose pulley, but would slip back on the tight pulley and start the ma-

chine if the stick dropped out.   He further testified that
the machine was not level on the floor, and that he had
told the foreman, Leonard, that the machine would start
off, and that Leonard had promised to fix it, but had not
done so while witness staid there.   He stated that he
had no previous experience before coming to work for
defendant, and had worked for it about four months,
and had worked on the press which hurt him
about three weeks at the time of his injury, having
worked on a smaller drill about a month prior to that
time.   He stated that the foreman, Leonard, had told
him always to stop the press to take out the drill, and
never to put my finger under a hole to see if the drill was
coming through; that he showed him how to start and
stop the machine, and told him to keep it greased to keep
it from getting hot, and that these were the only in-
structions that had ever been given him in regard to the
machine.

One Pennington, a witness for the plaintiff, testified
that he had worked for the defendant, and had used the
same machine which hurt him; that he used this ma-
chine about three weeks before the plaintiff was hurt;
that a small stick would be placed on the shifter when
the same was pulled back, and this would prevent the
machine from starting; that this stick without a notch
in it would shake out, and the shifter would work back
on the tight pulley and start the machine; that witness
himself cut a stick with a notch in it to fit around the
peg on the belt shifter, and this held the machine all
right when he used it.

One Wrenn, a witness for the plaintiff, testified that
he had worked on the same machine used by the plain-
tiff, and that when he used it a plain stick picked up
anywhere was used to hold the belt shifter in place; that
he had seen a set screw used on the shifter in place of a
stick, but the threads were worn and the screw lost out,
and latterly a plain stick was used.   The stick would
drop out from the quivering of the unsteady machine,
and the belt would gradually work over on the other pul-
ley and start the machine.

One Busby, a witness for the defendant, then testified that he was standing within a few feet of the plaintiff when he was injured, but did not see the accident. Saw the plaintiff holding his finger up, and he told me that he got hurt by feeling underneath the hole to see if the drill was through. I took his finger from under the header bar on the drill press table. He then testified that the machine in question was originally constructed without a set screw, but that he could not say whether one had been subsequently placed on it. On cross-examination, this witness stated that a set screw would work loose, but that a piece of wood properly grooved would make the machine perfectly safe; that a plain stick would not be safe, and was liable to jar off suddenly and start the machine; and that he put the severed part of the finger in a bottle for preservation, and that it was all torn up.

One Webb, a witness for the defendant, having testified as to the circumstances of the accident, and the use of a wooden block on the shifter, was asked this question on cross-examination: "After this accident, was any other instrument used?" On objection by the defendant, the court refused to allow the question to be answered.

One Leonard then testified that he was the foreman in charge of the shop when the plaintiff was injured; that he had given him general instructions as to the use of the machine, and had specifically warned him against putting his finger under work to feel for the point of the drill. That well regulated shops used drill presses without set screws on the belt shifters. On cross-examination he was asked to "State if it is not a fact that immediately or very soon after this accident to plaintiff, that the stick or piece of wood which had been previously used on this machine was discarded, and a metal bar of similar shape with notches in the end used in place of the wood or stick." The court refused to permit the question and plaintiff excepted.

Plaintiff was introduced as a witness in rebuttal, and having produced a bottle which contained the part of his finger cut off in the accident, offered the same in evi-

[Going v. Alabama Steel & Wire Co.]

dence, but the court, on the objection of the defendant, excluded the same and plaintiff excepted.

At the request of the defendant, the court gave the following written charges, to the giving of each of which the plaintiff separately excepted:

(a.) "If you believe from the evidence that the drill press was running at the time the plaintiff's finger was cut off, and that plaintiff did not stop the drill press to take the drill out to sharpen it, and that with the drill press running, ought not to have allowed his finger to come in contact with the bit or end of the drill, you must find for the defendant." (c.) "In your consideration of count "D," I charge you that there is no evidence that the defect therein alleged arose from the negligence of the defendant." (d.) "If after a fair consideration of all the evidence, the jury believes that it is probable that the plaintiff received his injury by putting his finger underneath the header bar after having been previously warned or instructed not to do so, he cannot recover in this case." (e.) "If the jury believe from the evidence that in well regulated shops drill presses are customarily and usually used without set screws on the shifter handle, the defendant could not be charged with negligence in failing to equip the shifter handle with a set screw."

There were verdict and judgment for the defendant. From this judgment the plaintiff appeals, and the various rulings to which exceptions were reserved, are now assigned as error.

ROMAINE BOYD and ROBERT N. BELL, for appellant. The demurrer to the 10th plea should have been sustained. Knowledge of the danger, not mere facts or conditions, is essential to the assumption of the risk. *So. Rwy. Co. v. Sheilds*, 121 Ala. 460; *So. Rwy. Co. v. Graydon*, 122 Ala. 241.

Charge "A" assumes that the plaintiff allowed his finger to come in contact with the end of the drill while running, and is therefore bad.—*Bates v. Hart,* 124 Ala. 427.

Charge "B" is argumentative and gives undue prominence to special testimony.—*L. & N. R. R. Co. v. Orr,* 121 Ala. 489.

JAMES WEATHERLY, *contra.*—It is insisted that there is no evidence that any defect existed in the machine. The use of a detachable stick—a thing entirely distinct from the machine itself—could not constitute a defect in the machine.—*Houston Biscuit Co. v. Dial,* 33 So. Rep. 268-273.

The defendant was entitled to the general charge. The plaintiff voluntarily assumed the risks of injury from the machine, or was guilty of contributory negligence in continuing to use the machine knowing that the stick was liable to fall out at any moment.—*Bham. Rwy. & Elec. Co. v. Allen,* 99 Ala. 359; *Eureka Co. v. Bass,* 81 Ala. 201; *Worthington v. Goforth,* 124 Ala. 656.

MC CLELLAN, C. J.—On the trial below, all the facts and circumstances bearing and attendant upon the infliction of the injury upon the plaintiff for which redress is sought in this action were fully developed and set forth in the evidence. The plaintiff himself testified affirmatively to receiving the injury, to the environment of the occurrence and to all its concomitants and pertinent antecedents, to its cause and to the manner of its causation. To assume that with the pleadings other than they were when the trial was entered upon and during its progress the plaintiff and the other witnesses would have testified to any other facts than those to which they did depose, would be to assume either that they testified falsely on this trial or that they would have testified falsely had the issues tendered by counts A, B and C, which went out on demurrers sustained, been in the case, for no other or different facts than those which were testified to could have been testified to by the plaintiff and the other witnesses with any degree of consistence with the testimony they affirmatively gave on the trial. No such assumption should or can be indulged; and we are not only authorized but bound to proceed upon the contrary theory that the testimony

actually adduced covered the whole of the occurrence and every material fact bearing upon it to the exclusion of the possibility of proof of other facts pertinent to the issues tendered by those counts. So considering the case, it is clear beyond controversy that there was and could have been no evidence in support of either of those counts, and, of necessary consequence, that the rulings of the court sustaining demurrers to them, whether erroneous or not, involved no injury to the plaintiff. The facts of the case negative the material averment in each of these counts as to plaintiff's ignorance and inexperience in respect of the operation of the machine which injured him and as to the dangers incident thereto; as to his incapacity to appreciate such dangers and avoid injury from them.—*Worthington & Co. v. Goforth, pro ami,* 124 Ala. 656; *Levy v. Bigelow,* (Ind. App.) 34 N. E. 128.

The case was tried on count D which avers that plaintiff's "injury was caused by reason of a defect in the condition of the ways, works, machinery or plant of the defendant * * * * in this, that the machine which plaintiff was operating as aforesaid was not equipped with a reasonably sufficient appliance for the proper control and operation of said belting on said machinery, by reason whereof the belting would get out of place and suddenly and unexpectedly start said machinery," etc., etc. The machinery in question was a steel drill press, or machine for drilling holes through steel or iron bars and the like. Plaintiff was in control of it. His duties included that of stopping the machine and taking out for that purpose and sharpening the drill when necessary. A proper way to stop the machine was to shift the belting which operated it from the pulley fixed to a shaft which gave motion to the machine onto a loose pulley on the same shaft, beside the other but not fixed to the shaft, so that its revolutions did not move the shaft. To prevent the belting from working back onto the fixed pulley while it was desired to keep the machine motionless, it was necessary to insert a small flat stick between a peg on the "shifter"—a sort of lever by which the belt was changed from one pulley to the other—and

the body of the press. This small flat stick when properly notched and the notch fitted around the peg would safely secure the belting on the loose pulley, and without the notch it was liable to be shaken out of position by the vibration of the machinery, and thereupon the belting would work back onto the tight pulley and start the machine. The theory of plaintiff's case is that having occasion to stop the machine to sharpen the drill point, he shifted the belt to the loose pulley and sought to secure it there by inserting the flat stick which defendant had provided for that purpose, but which had no notch in it, and was therefore an unfit and, in that sense, a defective appliance for that purpose, that because of such unfitness or defective condition the stick was shaken out of place, thereby allowing the belt to run back onto the tight pulley and start the machine, and that the motion thus imparted to the machine inflicted his injuries. There was evidence tending to support the facts underlying this theory. In our opinion these facts *prima facie* presented a cause of action. The appliance for securing the belting—the little flat stick—was a part of the *plant* of the defendant; and its inadequacy or inadaptability to the end for which it was to be employed was a *defect* in the condition of defendant's plant. The duty of supplying a proper appliance was upon the defendant, and the fact that only this defective one was at hand showed *prima facie* defendant's negligence in that regard.—*Sloss-Sheffield Steel & Iron Co. v. Mobley, Admx.* 139 Ala. 425, 434, 487.

The pleas were the general issue, contributory negligence, and assumption of risk by plaintiff. There was evidence for defendant tending to show that the injury did not result from the defect in the appliance for securing the belt on the loose pulley. The general issue was, therefore, for the jury's determination. This conclusion involves the further one which we have indicated above that there was evidence before the jury tending to show negligence on the part of the defendant in not providing a proper appliance for keeping the belt on the loose pulley while the machine was intended to be still. And it follows not only that the affirmative charge for

defendant could not have been properly given on the general issue, but also, that charge C, requested by the defendant, should not have been given.

We are unable to affirm as a matter of law that plaintiff was guilty of negligence in using the defective appliance, even though it appears that to his knowledge this sort of appliance had failed on one or two occasions to accomplish the end its use was intended to accomplish. Being supplied by the defendant for that use, as the jury had the right to find, or at least being reasonably supposed by him to have been supplied by the defendant for that use, as the jury had a right to find, and the defendant being negligent either in supplying this appliance or in not supplying a proper one, the question whether he was guilty of negligence in using it was, under all the circumstances, for the jury: It was not encumbent on the plaintiff to have and exercise the ingenuity required to devise and make a proper appliance, and it may never have occurred to him that a stick, with a notch in it to fit around the peg in the shifter was the appliance which the situation required.

Upon like considerations in connection with plaintiff's testimony that he informed defendant's superintendent that the machine would start when not so intended, and that the superintendent said he would have it fixed; we are further of opinion that the issue of assumption of risk *vel non* was for the determination of the jury. So that on no issue in the case was the defendant entitled to the affirmative charge, and so that also the court's error in giving charge c, cannot be said to have been without injury to the plaintiff.

Charge a; given for defendant is bad in that it assumes that plaintiff allowed his finger to come in contact with the end of the drill.

Charge e; was of doubtful propriety, to say the least. The usage and custom of well regulated shops to have no set screws in the handles of shifters attached to drill presses is a pertinent fact on the inquiry of negligence *vel non* in omitting such screws, but it is not conclusive. A shop may be well regulated, and yet not perfectly regulated and equipped. Very many are well regulated,

[Going v. Alabama Steel & Wire Co.]

doubtless—most of them perhaps—but probably very few, if any, exhibit all the care and caution which due diligence and prudence enjoin in the construction and equipment of their ways, works, machinery and plant. So it does not necessarily follow, as this charge in effect declares, that nothing done or omitted in them in the way of construction and equipment involves negligence.

The employment of the word "probable" as in charge "d" is not commendable: The hypothesis should have been upon the "reasonable satisfaction" of the jury, or, "if the jury is reasonably satisfied."

The 10th plea alleges facts which would be appropriate to a plea of assumption of risk, but which are not apt in a plea of contributory negligence, which is the conclusion drawn from the facts stated. This objection was not taken by the demurrer. The plea avers that plaintiff had full knowledge of the facts and conditions alleged in the complaint. Those facts and conditions pertained to the defect in the appliance for securing the belt on the loose pulley and embrace both the inadequacy of the appliance and the dangerous consequences of using it. The averment is therefore, essentially to the effect that plaintiff knew the danger of the situation. The further averment that with such knowledge he remained at the work for an unreasonable length of time, is the equivalent to saying that a reasonable man, i. e., a man of ordinary care and prudence, would not have so remained. The court did not err in overruling the demurrer to this plea.

If it should be made to appear in any way on another trial that the severance of a finger in the way plaintiff testified his finger was severed would leave the severed part in a certain condition or of a certain aspect differing from the condition or aspect of the part if drilled, cut or mashed off by the point of the drill, the dismembered part should be received in evidence.

We will not discuss the question which arose in respect of the stenographic report of the plaintiff's testimony, as it need not occur again.

There was no error in excluding the proposed testimony of the witness Webb, that after the injury to plain-

tiff some other appliance for securing the belt was used. As an independent fact to prove negligence in using the flat stick at the time of the accident the fact was not competent, and the witness had not testified on his direct examination to any fact or opinion which could form a predicate for this proposed evidence on his cross examination. Had he testified in chief that this piece of wood was in his opinion a safe and proper appliance, he might have been asked on cross-examination, for the purpose of abating the probative force and value of his opinion, whether he had not substituted another appliance after plaintiff's injury; but the evidence is not offered in any such connection or for any such purpose. *Frierson et al. v. Frazier*, (MS.) 37 South.—There is nothing in the case of *Louisville & Nashville R. R. Co. v. Malone*, 109 Ala. 509, opposed to this view. To the contrary that case is in line with and supports the conclusion we reach here.

Reversed and remanded.

HARALSON, DOWDELL and DENSON, J.J., concurring.