18 So.2d 84

**COKER v. LOUISVILLE & N. R. CO. et al,**

**7 Div. 767.**

Supreme Court of Alabama.

May 18, 1944.

546

Chas. Douglass, of Anniston, for appellant.

Merrill, Merrill & Vardaman, of Anniston, for appellees.

BROWN, Justice.

Action on the case by appellant against the appellees to recover damages alleged to have been proximately caused through the concurring negligence of defendants, their respective agents or servants in handling their respective trains at Wellington, Alabama, where the tracks of the two railroads cross at right angles, and where defendants maintain joint depot and signaling facilities to govern the movement of trains over said crossing, handled by the station agent for both companies.

The averment of inducement in the several counts of the complaint and the elements of damages catalogued, to some of which demurrers were sustained, are in substance and legal effect the same as the averments in Counts D and H on which the case went to trial. And the negligence charged, in general terms in said counts—aside from E—are in substance and legal

effect the same. So if it should be conceded that the court erred in sustaining the defendants' demurrers to Counts F and G, the ruling was without injury, as the plaintiff had the full benefit of every phase of the case as presented by the evidence under said Count H. Louisville & Nashville R. Co. v. York, 128 Ala. 305, 30 So. 676; Meyer Bros. Drug Co. v. Puckett, 139 Ala. 331, 35 So. 1019.

■ The ruling sustaining the demurrers to count E which charged willful or wanton injury was rendered innocuous by the evidence, no phase of which, in any respect, tended to support the charge made in said count, and no evidence offered and excluded would have had any such tendency. Going v. Alabama Steel & Wire Co., 141 Ala. 537, 37 So. 784.

■ If as stated in brief of appellant the court charged out count "D"—a count in case—on the theory that the charge of negligence in that count carried to plaintiff the burden of showing corporate participation by defendant in the damnifying act,—this was error. Abingdon Mills v. Grogan, 167 Ala. 146, 52 So. 596; Evans Bros. Const. Co. v. Steiner Bros. 208 Ala. 306, 94 So. 361.

This, however, was also error without injury as the plaintiff had the full benefit of every phase of the case presented by the evidence under said count H. Going v. Alabama Steel & Wire Co., supra.

.The evidence is without dispute that on the day of the collision and the alleged injury to plaintiff, she and her two daughters were passengers on the passenger train of the defendant, Louisville and Nashville Railroad Company, having gone aboard at Duke, Alabama, and paid fares to Anniston, Alabama; that when said train approached the crossing at Wellington, it was ten minutes late, that the engineer gave the station signals and called for and was given the board,—the passing signal to proceed to the station and regular stopping place; that the train proceeded and stopped at the station as usual with the tender of the locomotive across the Seaboard Air Line Railroad Company tracks. This stop was made at 11.32 o'clock a. m.

The evidence further shows that the defendant maintained a gate, with large stop sign and red and green lights, which was so situated that it could be locked across the respective railroad tracks, when trains on the other road were given priority of passage, and on the occasion said gate was locked across the Seaboard tracks, and the red flag on the semaphore was held against the approach of the Seaboard train, which approached and reached the crossing about 11.33 a. m., one minute after the L. & N. train had stopped at the station, running six or seven miles per hour, struck the tender of the L. & N. train, ploughed it off the track, severed it from the mail and baggage car and turned the L. & N. engine over.

The testimony is without dispute that after the engineer on the L. & N. had called for the board and the agent had dropped the red flag signaling for him to proceed, the station agent Mr. Slappey discovered the Seaboard train approaching, about ¼ of a mile from the crossing and signaled with his hands for it to stop.

The plaintiff testified: "It was just an instant after the collision of the trains at Wellington when I learned about it. I did not see the accident when it happened, but I felt the effect of it, just the jar of the coach and the hissing of the steam. Answering your question, it didn't injure me any, did it, I answer: Nothing only it just excited us. It scared us beside ourselves. We were frightened and excited, right at the moment of the accident. The jar of the train of course brought us to notice the thing that had happened, and we saw the steam. The conductor was not in our coach at the time this accident happened. We were in our seats at the time it happened. It did not throw us out of the seat. I did not have any bruises, but was excited. I suffered a nervous strain and it lasted for several days. The windows to the car were down, but through the glass, we could see the steam and we then went to the door of the car. We could see the engine from the door of the car. I remained in the car about forty minutes after the accident. At the time of the accident, the car was comfortably heated. About thirty minutes after the accident, the conductor came back to the coach. Yes, the waiting room of the depot was very comfortable, but I could not stay there with the children, because we were all so nervous. We were not invited to leave the train and go to the waiting room of the depot until we had been in the car of the train for thirty or forty minutes, and before that time the train coach had gotten cold. We did not get up and leave the car because the conductor, when he

first came back, said that he would be back for us. I did not know so much about Wellington. I never lived there, but had lived at Duke, about two miles away. I had learned a little about Wellington by passing through. This was the first time I had made a stop at Wellington. I did not have any money with me at that time. When I got on the train at Duke, I paid the conductor 65¢ as railroad fare. I was going to Anniston for employment, and did not expect to go back to Duke for a couple of weeks. After the collision, I went back to my home at Duke. I left Wellington something about 3 o'clock. I do not know what time the train on which I went from Duke to Wellington left Wellington for Anniston. When I got back to Duke, I went in my home. I went to get the money to go on and finish my trip that day. * * *"

The evidence is further without dispute that about 3 o'clock the L. & N. trainmen procured another locomotive from Birmingham and the train proceeded on to Anniston, but before it proceeded the conductor looked and inquired for Mrs. Coker and she was not there. The conductor, Mr. Pound testified: "My train moved on sometime after 3 o'clock. It was after we got another engine from Birmingham. Mrs. Coker did not continue as a passenger on my train. When I looked up the passengers, I made inquiry for Mrs. Coker and she was not there. I went on to Anniston and on to Calera. After the lady with the two children left in an automobile for Ft. McClellan, Mrs. Coker demanded that I get her a way from there. She started to making demands on me to do that. The only way I had to get her there was to wait for an engine to come and move my train."

The plaintiff testified: "At that time, I did not have any money with me. After the conductor about 3 o'clock in the afternoon, told me that he could not arrange a way for me to get to Anniston, I went to the store there of Mr. Bryant and asked him if he knew where I could get a way, and he said he did not know of any. About 20 minutes after that, I saw Mr. Holt Noah, and he said he would carry me back to Duke, and in about thirty minutes the children and I were on the way to Duke with him. This was between 3 and 4 o'clock".

The plaintiff offered to show that she and the little girls walked about a mile to the point where they could catch a bus and that they then rode the bus to Anniston paying bus transportation.

■ It was permissible for the defendants to show that the L. & N. train stopped at the usual stopping place for discharging and receiving passengers. Birmingham Ry. Lt. & Power Co., v. Enslen, 144 Ala. 343, 39 So. 74. The other rulings of the court on the admission and rejection of evidence were free from error. Standard Oil Co. v. Humphries, 209 Ala. 493, 96 So. 629.

■ There is no evidence showing or tending to show negligence on the part of the trainmen in charge of the Louisville & Nashville Railroad Company's train, or that the station-master was negligent in giving the signal, for that train to proceed, or that he was otherwise guilty of negligence in allowing said train to proceed into the station grounds. The trainmen operating the train and the station agent had the right to assume that the Seaboard train would stop before it reached the crossing. The gate was closed across the tracks and the red flag on the semaphore was set against its passage. Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223. The court did not err in giving the affirmative charge in favor of the Louisville & Nashville Railroad Company, and the judgment in its favor is due to be affirmed.

The evidence is without dispute that the plaintiff suffered no personal physical injury or financial loss. While she had paid transportation for herself and her daughters—65 cents—from Duke to Anniston, she voluntarily abandoned her trip on the train, returned to her home some two miles distant, then proceeded to the highway, about a mile away, caught a bus and reached her destination around 5 o'clock. The train left Wellington around 3 o'clock and probably reached Anniston, eleven miles distant, before 5 o'clock.

■ There is no foundation in the evidence to support the claim for loss of employment, and the rulings of the court in respect to evidence touching this claim are free from error and the written charges refused to plaintiff were properly refused. Inconvenience, expense or hardship resulting from the voluntary abandonment of the train trip by the plaintiff cannot be said to be the direct, proximate result of wrong on the part of the trainmen operating the Seaboard train, and do not furnish a bases for recoverable damages in this action ex delicto. Nashville C. & St. L. Ry. v. Camp-

550

bell, 212 Ala. 27, 101 So. 615; Louisville & N. R. Co. v. Quick, 125 Ala. 553, 28 So. 14; Central of Georgia R. Co. v. Barnitz, 198 Ala. 156, 73 So. 471.

Assuming that the plaintiff was entitled to nominal damages against the receivers of the Seaboard Company for inconvenience suffered in the interruption of her transportation from Duke to Anniston, the written charges given for the defendant touching the measure of damages were not erroneous.

"Where there is no important right to be vindicated by the awarding of nominal damages, the failure to award them is not a reversible error, unless the plaintiff would be entitled to recover his full costs. When to award nominal damages would only entitle plaintiff to recover nominal costs, the judgment of a lower court will not be reversed, for failure to award such nominal damages." Blackburn v. Alabama Great Southern Railroad Co., 143 Ala. 346, 39 So. 345, 5 Ann.Cas. 223; Code 1940, Tit. 11, § 67.

Steward v. Gold Medal Shows, 244 Ala. 583, 14 So.2d 549, involved the establishment of the plaintiff's right to the custody of her minor son, and his earnings, and the comfort incident thereto. Not only so, but in that case, she was denied the right by the ruling of the court to have the material incidents of the case submitted to the jury. Not so here.

We find no reversible error on the record.

Affirmed.

GARDNER, C. J., and THOMAS, FOSTER, LIVINGSTON, and STAKELY, JJ., concur.