LIPSTEIN v. PROVIDENT LOAN SOCIETY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   January 24, 1913.)

1. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—APPLIANCES AND PLACES FOR WORK—"PLANT."

Under Consol. Laws 1909, c. 31 (Laws 1909, c. 36) §§ 200–204, as amended by Laws 1910, c. 352, providing that, when personal injury is caused to an employé, who is himself in the exercise of due care, by any defect in the ways, works, machinery, or "plant" of the employer, the employé shall have the same right of compensation or remedy as if he had not been employed, the word "plant" includes anything (as distinguished from persons) animate or inanimate, whether fixed or movable, that is regularly used in the conduct of the business of an employer, and that is neither ways, works, nor machinery, and without which, or something of a similar character, the business could not be carried on in the usual and ordinary manner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 6, pp. 5400, 5401; vol. 8, p. 7755.]

2. STATUTES (§ 215*)—CONSTRUCTION—GENERAL RULES—STATUTES IN PARI MATERIA.

In determining the meaning of a word used in a statute, the court is warranted in considering the scope and purpose of the act, its history, other statutes in pari materia, and judicial construction of similar statutes in other jurisdictions.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 291; Dec. Dig. § 215.*]

3. STATUTES (§ 226*)—CONSTRUCTION—STATUTES ADOPTED FROM OTHER JURISDICTIONS.

When the Legislature enacts a statute which is a transcript of an English act that has received a known and settled construction by the courts of that country, such construction is deemed to be within the intent of the lawmaking power.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. § 226.*]

4. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—APPLIANCES AND PLACES FOR WORK—STATUTORY PROVISION.

A ladder furnished to an employé for the purpose of reaching electric light globes, which he was required to clean, constituted a part of the employer's plant, within Consol. Laws 1909, c. 31 (Laws 1909, c. 36) §§ 200–204, as amended by Laws 1910, c. 352, defining the liability of an employer for injuries from defects in the ways, works, machinery, or plant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

5. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—APPLIANCES—"DEFECT."

That a ladder furnished to an employé to be used on a tiled floor, which was slippery at times, had nothing to fasten it or prevent it from slipping, was a "defect," within Consol. Laws, c. 31 (Laws 1909, c. 36) §§ 200–204, as amended by Laws 1910, c. 352, defining the liability of an employer for injuries to an employé from any defect in the plant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 2, pp. 1931–1933.]

Woodward and Hirschberg, JJ., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Samuel Lipstein against the Provident Loan Society of New York. From a judgment dismissing the complaint, and an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and WOODWARD, JJ.

Sydney W. Stern, of New York City, for appellant.

Henry L. de Forest, of New York City, for respondent.

BURR, J. This action is brought under the provisions of the Labor Law relating to the liability of employers carrying on business for injuries sustained by persons in their employ. Consolidated Laws, c. 31 (Laws of 1909, c. 36), §§ 200–204, as amended by Laws of 1910, c. 352. This act provides that:

"When personal injury is caused to an employé who is himself in the exercise of due care and diligence at the time: (1) By reason of any defect in the condition of the ways, works, machinery, or plant, connected with or used in the business of the employer which arose from or had not been discovered or remedied owing to the negligence of the employer, * * * the employé * * * shall have the same right of compensation and remedies against the employer as if the employé had not been an employé of nor in the service of the employer nor engaged in his work."

[1] The decision of this case requires us to construe the meaning of the word "plant" therein contained. In its primary meaning, this word relates to growth of a vegetable character, and there is involved in it the idea, not only of attachment to the soil, but some degree of permanency. When used in connection with a manufacturing, mercantile, or industrial establishment, it has a wider significance. It has been defined to be:

"Fixtures, machinery, tools, apparatus, appliances, etc., necessary to carry on any trade or mechanical business, or any mechanical operation or process." Century Dictionary, title "Plant."

"The whole machinery and apparatus employed in carrying on a trade or mechanical business." Webster's Dictionary, Id.

"A set of machines, tools, etc., necessary to conduct a mechanical business." Standard Dictionary, Id.

A still wider signification, determined by the context in the contract in which it was employed, may be found in Rooney v. Thomson (Sup.) 84 N. Y. Supp. 263, where "plant" was held to mean "discoveries" in connection with the electrical treatment of disease and appliances adapted to the use thereof.

[2] In determining its present meaning, we are warranted in considering the scope and purpose of the act, its history, other statutes in pari materia, and judicial construction of similar statutes in other jurisdictions. Endlich on Interpretation of Statutes, §§ 58, 59, 365–371. One purpose of the statute in question is to secure greater safety to employés—first, affirmatively, by imposing additional obligations upon employers; and, second, negatively, by withdrawing from their protection certain previously existing defenses. Laws of 1902, c. 600, entitled "An act to extend and regulate the liability of employers to

make compensation for personal injuries suffered by employés";
Bellegarde v. Union Bag & Paper Co., 90 App. Div. 577, 86 N. Y.
Supp. 72, affirmed 181 N. Y. 519, 73 N. E. 1119; Gmaehle v. Rosenberg, 178 N. Y. 147, 70 N. E. 411; Griffiths v. Dudley, Law Reports,
9 Queen's Bench Division, 387; Ryalls v. Mechanics' Mills, 150 Mass.
190, 22 N. E. 766, 5 L. R. A. 667; Quigley v. Lehigh Valley R. R.
Co., 80 N. J. Law, 486, 79 Atl. 458.

[3] Our statute in its present form closely follows the language of
the English act respecting employers' liability. St. 43 and 44 Vict. c.
42, September 7, 1880. When the Legislature of this state enacts a
statute which is a transcript of an English act that has received a
known and settled construction by the courts of that country, such
construction may be fairly deemed to be within the mind and intent of
the lawmaking power. Endlich on Interpretation of Statutes, § 371;
Ryalls v. Mechanics' Mills, supra. In the Ryalls Case Justice Holmes,
referring to the decisions construing the English act, said:

"This was the state of comment upon and construction of the English statute when the Massachusetts act was passed, copying its words very closely.
We cannot deal with the latter quite on the same footing as if the Legislature had framed it in their own language, used for the first time. We must
assume that they were content with the expounded meaning of the words
which they adopted."

But although in its present form the words employed to describe the
subject-matter of "defects" follows the language of the English act,
such was not the case when our statute was first adopted. Laws of
1902, c. 600. The defects therein referred to were those occurring
in "the ways, works or machinery." The word "plant" at that time
appearing in the English act was omitted, and, we must presume, intentionally. When, however, that word was added to our statute by
the amendment of 1910 (supra), doubtless the Legislature intended to
enlarge its scope. Decisions of our own state construing the former
provisions thereof must now be read in the light of that intention. At
the same time we should consider also the provisions of other statutes
of this state in pari materia, and particularly the statute relating to
the liability of railroad corporations to their employés. By the latter
act, first adopted in 1906 (Laws of 1906, c. 657) and re-enacted in
1910 (Consolidated Laws, c. 49 [Laws of 1910, c. 481], § 64), the
"defects" referred to are those existing in the condition of the—

"ways, works, machinery, *plants, tools* or *implements*, or of any car, train,
locomotive or attachment thereto."

If the addition of the word "plant" to the Labor Law by an amendment which went into effect September 1, 1910, was to enlarge the
scope of the former act, the omission of the words "tools or implements," which had been a part of the Railroad Law for a period of
four years, and which was re-enacted by a statute to take effect June
14, 1910, may be taken as some indication of an intent to make the
Labor Law somewhat less comprehensive than the Railroad Law.

Seeking, now, for such light as may come from judicial construction
of similar statutes in other jurisdictions, we naturally turn to some of
those cases relating to the English act, which may be termed the par-

ent statute.  In Cripps v. Judge, Law Reports, 13 Queen's Bench Division, 583, in 1884, the Court of Appeal held that a ladder used by a firm of builders in connection with the construction of a house, was part of its plant.  In 1886, in Weblin v. Ballard, Law Reports, 17 Queen's Bench Division, 122, the Divisional Court of the Queen's Bench, on appeal from the Brentford County Court, held to the same effect.  In the succeeding year, in Yarmouth v. France, Law Reports, 19 Queen's Bench Division, 647, Lord Esher, Master of the Rolls, speaking for a majority of the court, not only held that a horse constituted a part of the plant of defendants, who were wharfingers and warehousemen, and who used horses and trolleys to transport goods from their warehouse to the consignees thereof, but also gave this general definition of the word:

"The materials or instruments which the employer must use for the purpose of carrying on his business, and without which he could not carry it on at all."

In the same case, Lord Lindley said:

"There is no definition of plant in the act; but, in its ordinary sense, it includes whatever apparatus is used by a business man for carrying on his business—not his stock in trade, which he buys or makes for sale, but all goods and chattels, fixed or movable, live or dead, which he keeps for permanent employment in his business."

Although there was a dissent in that case, it did not involve the construction of the word "plant."  In 1898, in Carter v. Clarke, 14 Times Law Reports, 172, Mr. Justice Day of the Queen's Bench Division, on appeal from the Lewes County Court, held that a vessel used by defendants to transport coal from Cardiff to Newhaven, they being under a contract to supply coal to the London, Brighton & South Coast Railway Company, was part of its plant.

If we turn now to similar statutes in sister states, and the judicial construction thereof, we consider first the language of the Alabama statute, which conforms to ours in the use of the words "ways, works, machinery or plant."  Code Ala. 1896, § 1749; Code Ala. 1907, § 3910.  In Georgia Pacific Ry. Co. v. Brooks, 84 Ala. 138, 4 South. 289, it was held that a hammer used to spike a rail to a cross-tie was not "machinery" within the meaning of the statute.  The court seems not to have considered whether it may not have constituted a part of the plant, stating in substance that it was conceded that it was not part of the ways, works, or plant.  This is a concession which may not have been wisely made so far as the latter term is concerned.  In Birmingham Furnace & Mfg. Co. v. Gross, 97 Ala. 220, 12 South. 36, it was held that furnishing a ladder to be temporarily used for the purpose of making a repair to the lever arm of a damper near the top of the tall chimney of a blast furnace, instead of constructing a platform upon which to stand for that purpose, did not constitute a defect in the ways, works, machinery, or plant of defendant.  In Clements v. Ala. Great So. R. R. Co., 127 Ala. 166, 28 South. 643, defendant was held not to be liable for furnishing a steel bar to be used in prizing up a rail upon its track, and which was alleged to be defective, because dull and blunt at the end, instead of being sharp.  But the question whether this con-

stituted a part of defendant's plant, or whether its condition constituted a defect therein, seems not to have been considered in the opinion, which went upon the ground that such bar was not "machinery in the meaning of the statute." The soundness of some of these decisions seems to have been questioned in Sloss-Sheffield Steel & Iron Co. v. Mobley, 139 Ala. 425, 36 South. 181, and the suggestion is there made that:

"There may be a distinction between tools and appliances used in the repair of the ways, works, or machinery, and the tools, implements, and appliances used in the regular prosecution of the business of the employer."

Finally, in Going v. Ala. Steel & Wire Co., 141 Ala. 537, 37 South. 784, it was held that a flat stick regularly used to prevent the shifting of a belt from a loose to a fixed pulley on the shaft was part of defendant's plant, and that a failure to have the same properly notched, so that it would not slip out of place, was a defect therein.

The New Jersey act (Public Laws 1909, c. 83) employs the words "place, ways, works, machinery or plant"; but we have been unable to find any decision of the highest court of that state construing the word "plant."

The Pennsylvania act of June 10, 1907 (P. L. 523), makes use of the words "works, plant and machinery." In Toward v. Meadow Lands Coal Co., 229 Pa. 553, 79 Atl. 129, plaintiff's intestate was killed by being thrown from a car in a mine because a mule had strayed upon the track and came in collision therewith. In that case it was held that failure to equip a mule hole in a mine with a hitching post to which a mule might be tied, or with some bar or gate by which he could be kept within it, was a "defect," within the meaning of the words used in the statute, for which defendant was liable.

We have not considered the decisions under the Massachusetts act (Rev. Laws, c. 106, § 71), nor of the Colorado act (Revised Statutes of Colorado 1908, p. 596), for the reason that the words employed are "ways, works or machinery," and the word "plant" is omitted therefrom. We have not considered the provisions of the Indiana act (3 Burns' Annotated Statutes [1908] § 8017), for the reason that it adds to the words "ways, works, machinery or plant" the words "tools."

Applying, therefore, the various tests above suggested, we conclude that anything (as distinguished from persons), animate or inanimate, and whether fixed or movable, that is regularly used in the conduct of the business of an employer, and that is neither ways, works, nor machinery, and without which, or something of a similar character, such business could not be carried on in the usual and ordinary manner, may be deemed to be a portion of the plant connected with such business. Whether under the Railroad Law above referred to the use of the words "tools and appliances" may be held to include a tool temporarily used in connection with an emergency arising in the conduct of the business, we need not now determine. We think it would be extending the word "plant," as used in the Labor Law, beyond the fair meaning thereof to include therein an appliance thus used.

[4] In the case at bar the complaint was dismissed upon the opening of plaintiff's counsel, which is made a part of the record upon ap-

peal. If plaintiff's evidence sustained the statements therein contained, the jury might have found the following as facts: Defendant was engaged in carrying on the business of a pawnbroker in a large building at the corner of Rockaway and Pitkin avenues in the borough of Brooklyn. The ceiling of the principal room where defendant received its customers was about 30 feet above the floor. Suspended from the ceiling were about 12 lighting fixtures, consisting of electric bulbs inclosed in globes. These globes were about 12 feet from the floor. Plaintiff was employed by defendant as a caretaker or porter, and it was part of his duty at regular intervals to clean these lighting fixtures and the globes thereof, and certain other wire fixtures about the same distance above the floor. The floor of this room was covered with tiling and was at times slippery. To enable plaintiff to reach these fixtures, defendant furnished him with one-half of an extension ladder (the whole of which was about 25 feet in length), and instructed him to use this when engaged in the discharge of his duties. There was nothing at either end of the ladder to fasten the same or to prevent it from slipping. On several previous occasions the foot of the ladder had slipped upon the smooth tiled floor while plaintiff was using it. He had informed defendant's general manager of these occurrences, and complained to him of the danger of the use of such ladder, and asked to be furnished with a step ladder. On some of these occasions the manager replied that he "would see about it," and on one occasion plaintiff was told that he, the manager, would "see that he got another ladder." On December 24, 1910, plaintiff placed the ladder in a careful manner against the wall for the purpose of cleaning one of the fixtures in the manner in which he had been theretofore instructed. When he was about halfway up the ladder, without fault on his part, it slipped and he was thrown down and injured. We think this ladder was part of the plant used and employed in defendant's business. Keeping its premises in a clean condition, so as to attract its customers, and its lighting apparatus efficient for the use of its employés, might be found to be essential to the conduct thereof.

[5] There was also a defect in the plant within the meaning of the act under consideration. That the ladder did not break—that it was sound—viewed as an implement apart from the manner of its use, is not conclusive upon this question. In Heske v. Samuelson, Law Reports, 12 Queen's Bench Division, 30, Lord Chief Justice Coleridge said:

"The question is whether the fact that the machine was unfit for the purpose for which it was applied, constitutes a 'defect in its condition' within St. 43 & 44 Vict. c. 42. The question must really answer itself. If it was not in a proper condition for the purpose for which it was applied, there was a defect in its condition within the meaning of the act."

And in the same case Sir James Fitzjames Stephen said:

"Could it be said that, if a windlass fit only for raising a bucket is used to draw up a number of men, there is no defect in the condition of the machinery. The condition of the machine must be a condition with relation to the purpose for which it is applied."

See, also, Weblin v. Ballard, supra.

The judgment and order appealed from must be reversed, and a new trial granted; costs to abide the event.

JENKS, P. J., and CARR, J., concur. HIRSCHBERG, J., dissents.

WOODWARD, J. I dissent. While I agree with the views of Mr. Justice BURR as to what constitutes the plant, I do not wish to vote that there is a liability on the part of a master for every defect, real or fanciful, which may be suggested after the accident has happened; and in this case, if there was no defect in the ladder as designed, if it was a perfect ladder of its kind, because it slipped on a slippery tile floor does not necessarily render the defendant liable, or present a question of fact for the jury.