KENZ v. BERNHEIMER & SWARTZ PILSENER BREWING CO. et al.

(Supreme Court, Appellate Division, Second Department. May 29, 1914.)

MASTER AND SERVANT (§ 321\*) — LIABILITY FOR INJURIES TO CONTRACTOR'S EMPLOYÉ.

> The proprietor of a brewery containing, as a part of the plant, beer vats, the interior of which needed to be varnished at frequent intervals, employed an independent contractor to do the work of varnishing, the varnish being selected and furnished by such proprietor. The fumes from the varnish injured the eyesight of an employé of the contractor. There was in general use a device, known as a blower, which would have ventilated the vats, preventing injury from the poisonous effects of the fumes, but neither the proprietor nor the contractor supplied such appliance. *Held*, that the proprietor was liable for the injuries under Labor Law (Consol. Laws, c. 31), § 200, as amended by Laws 1910, c. 352, providing that if an employer contracts with an independent contractor to do part of such employer's work, such contract shall not bar the employer's liability for injuries to the contractor's employés, caused by any defect in the condition of the ways, works, machinery, or plant, if they are the property of the employer, or are furnished by him, and if such defect arose or had not been discovered or remedied, through the negligence of the employer or of some person intrusted by him with the duty of seeing that they were in proper condition, since the vat without the blower was not a safe place to work, but was unsafe and defective.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1262; Dec. Dig. § 321.\*]

> Thomas, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Gustave Kenz against the Bernheimer & Swartz Pilsener Brewing Company and others. From a judgment for plaintiff and an order denying a new trial, the defendant named appeals. Affirmed.

---

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

Frank Verner Johnson, of New York City, for appellant.

M. L. Malevinsky, of New York City (Bertha Rembaugh, of New York City, on the brief), for respondent.

STAPLETON, J.   The plaintiff's eyesight was impaired by fumes of wood alcohol.   The fumes were produced by the application of varnish to the interior surface of appellant's beer vats.   The varnish contained 58 per cent. of methyl alcohol and 42 per cent. of shellac. This combination throws off fumes.   The vats are circular in form and vary in size.   The smallest are 10 or 12 feet in height and 8 or 10 feet in diameter.   They are without opening, except that at the base there is a manhole 2 feet wide and 2 feet high, and at the top there is a bunghole 2 inches in diameter.   These openings furnish the only outlet for the fumes, and are inadequate to liberate them naturally.   There is in general use a mechanical device, known as a blower, which is operated by electricity, and which ventilates the vats while the work of varnishing the interior surface is in progress.   Its purpose is to prevent injury to persons engaged in that sort of work from the poisonous effects of the alcohol fumes.   The plaintiff recovered a verdict against his employer, Lutz, and against Bernheimer & Swartz Pilsener Brewing Company, which is the sole appellant.

The plaintiff served a notice under the Labor Law (chapter 36, Laws of 1909, constituting chapter 31 of the Consolidated Laws, as amended by chapter 352, Laws of 1910, § 201).

The appellant owns and conducts a brewery.   Beer vats are a part of its plant.   It desired to have the interior surface of the vats varnished.   It is necessary to do this work at frequent intervals.   The defendant selected and furnished the varnish; it knew the danger confronting a varnisher when varnishing without proper ventilation; it was familiar with the device, in general use, designed to produce such ventilation; it elected, for purposes of its own, to have the varnishing done without the use of such device; it contracted with one Lutz to do the work; it supplied no blower.   Lutz employed the plaintiff as a varnisher.   Lutz used no blower.

Upon this state of acts the trial court submitted the question of the appellant's negligence to the jury.   The theory of the submission was that if the jury found the facts in favor of the plaintiff, liability was established under the provisions of section 200 of the Labor Law (ut supra), which, in so far as applicable, reads:

"If an employer enters into a contract, written or verbal, with an independent contractor to do part of such employer's work, or if such contractor enters into a contract with a subcontractor to do all or any part of the work comprised in such contractor's contract with the employer, such contract or subcontract shall not bar the liability of the employer for the injuries to the employés of such contractor or subcontractor caused by any defect in the condition of the ways, works, machinery, or plant, if they are the property of the employer or are furnished by him, and if such defect arose, or had not been discovered or remedied, through the negligence of the employer, or of some person intrusted by him with the duty of seeing that they were in proper condition."

147 N.Y.S.—65

The state of facts presented upon the trial, and herein outlined, brings the case, in our opinion, clearly within the scope of this statute. The vats are part of appellant's plant. Lipstein v. Provident Loan Society, 154 App. Div. 732, 139 N. Y. Supp. 799. The appellant supplied the place to work and the material with which to work. The material was inherently dangerous to the health of the workmen unless applied with certain aids that are customarily used. Appellant did not supply those aids or see to it that they were supplied. It was in fact, for its own purpose, hostile to their use. A vat, with a blower applied, is a safe place to do the work. Without the blower applied, the vat is unsafe and defective, because there is lacking an apparatus essential to the safe prosecution of the work. The injury to an employé of a contractor, with whom the appellant entered into a contract to do part of its work, was caused by a defect in the condition of the plant, the property of the appellant and furnished by it.

We have examined the exceptions upon which the appellant assigns error, and have concluded that no reversible error was committed.

The judgment and order should be affirmed, with costs.

JENKS, P. J., and CARR and PUTNAM, JJ., concur. THOMAS, J., reads for reversal.

THOMAS, J. (dissenting). Plaintiff was injured by the fumes of refined wood alcohol while applying varnish to one of the inner walls of appellant's beer vats, after several days at such employment. He was not appellant's servant, but that of Lutz, the person who had agreed to do the work and furnish all the utensils, except the varnish and electric heaters. The tank in question at its base had an entrance opening 10 by 12 inches in size, and another at the top, about two inches in diameter, which furnished the only outlet for the fumes of the alcohol, which composed 58 per centum of the varnish. Dr. Stein, of the firm vending the varnish, states that he told appellant's chemist, Hartman, to give the men plenty of air. The question is whether the appellant owed plaintiff the duty of furnishing a fan or blower to force air into the manhole, or an ejector to draw it through the bunghole. The alcohol was used to solve the shellac, and when the varnish was applied to the heated sides of the tank, the alcohol was liberated, and the warm vapor, ascending, found its way through the upper aperture of the tank, carried by a draft of air from the manhole. It was known in the trade that a fan driven at the manhole increased the current of air, and one witness said that he had devised an ejector to suck the air through the bunghole. Before treating the tank with a coat of varnish, charcoal was burned within, and something in the way of fans or blower was necessary to carry off the fumes of it, and the same implement would expedite the outflow of the vapor of the alcohol. But the air tended to cool the sides of the tank, whereas their walls were heated so that when the varnish was laid on, the alcohol would more quickly evaporate and leave a better coating of shellac. There was evidence that blowers were used often, but the contractor, Lutz, did not use them save for the removal of the charcoal. There was nothing unusual in the composition of the varnish, as it merely involved

shellac, cut with Columbian spirits or refined wood alcohol, and was commonly used in the trade. The vapor of the alcohol tended to the intoxication of those in the tank, so that three men worked together, and, having applied the varnish for a half hour, they customarily came back to the room for relief. But the evidence is that persons working under its influence at times and in instances had received injury to their eyes, and in sporadic cases the impairment of the sight became per- manent. It was such harm that befell the plaintiff after several days, during which he had no other injurious or disagreeable sensations than I will mention. He had a grogginess when, after a half hour, he first came out of a tank on the first day, which passed away. He was not disturbed the second, third, and fourth days. On the fifth day the grogginess came again, impaired his memory and his self-control, so that he went home with the aid of his brother, and the dizziness pro- gressed to a limitation of his vision. I find nothing that distinguishes the trade involving the use of this varnish from other vocations to which dangers from poisoning are incidental. The use of highly noxious chemicals in varying forms of combination is commonly found in the arts and sciences, and even in ordinary manual industry. The plaintiff was not a novice in varnishing such tanks, although he said that in his former employment blowers had been used. There was no reason, therefore, why the brewery company should not contract for the work and leave the responsibility with the contractor. The law does not forbid a person from turning over work involving dangers to those who make such work their special business, and who know the dangers and the common ways of meeting them. This specializing in vocations exists in innumerable instances in the varying demands and necessities of mankind, and there is no occasion for excluding the varnishing of the interior walls of beer vats from the multitude of undertakings, great and small, that are made the subject of independent contract. But it is said that the Employers' Liability Act imposes lia- bility on the brewing company.

"Such contract or subcontract shall not bar the liability of the employer for the injuries to the employés of such contractor or subcontractor, caused by any defect in the condition of the ways, works, machinery, or plant, if they are the property of the employer or are furnished by him, and if such defect arose, or had not been discovered or remedied, through the negligence of the employer, or of some person intrusted by him with the duty of seeing that they were in proper condition." Section 200, Employers' Liability Act, as amended by Laws of 1910, c. 352.

The argument is this: The beer tank was a part of the owner's works or plant; it was defective in that it did not have a blower to carry off alcoholic vapor in course of applying varnish by an inde- pendent contractor. Hence the owner must respond. There was no defect in the tank. The blower is an implement of the contractor's trade and not that of the owner. The danger arose from nothing that the owner controlled, but from the work the contractor did and the way he did it. The defect, if any, was in the contractor's outfit. Therefore the appellant has been burdened with the duty of supervis- ing the outfit and the manner of doing the work, lest by the contrac- tor's omission his servants in the course of doing his will and his work

should be harmed. If that were the legislative command, in the course of painting, repairing, or building a house, the renovation of a steamship, in short, in the infinite variety of things that men upon their own premises employ others to do, every act or omission of the contractor, may impute negligence to the contracting owner. In my judgment, it did not mean that. There were some errors upon the trial, notably in the reception of the testimony of Neuberger that Hartman told him that he could not use blowers. The plaintiff or his employer was not privy to it, and Lutz himself disclaims any limitation of his use of blowers or other safety devices. It is doubtful whether similar testimony by the cellarman was admitted against this defendant. It was not admissible.

The judgment and order should be reversed, and a new trial granted, costs to abide the event.