are in themselves a revocation, unless express provision be made in view of the new duties arising from the changed relation.

After much deliberation, it has been settled that the rules applicable have reference to the existing state of facts at the time the will itself was made. Israell v. Rodon, 2 Moore, P. C. 51. It follows that subsequent acquisition of property, and an augmenting of the estate after the execution of such antenuptial will, cannot prevent this revocation, which rests on the situation when the will was executed. Marston v. Roe, dem. Fox, 8 Ad. & Ellis, 14. Mere accumulation of property in addition to that possessed at the date of the antenuptial will cannot, upon any ground of reason, be considered as a "provision" made by the testator for the new dependents upon him as a husband and father. Baldwin v. Spriggs, 65 Md. 373, 5 Atl. 295.

Even before the New York statute took effect, an increase of the testator's property did not prevent this implied revocation. In a case of marriage and birth of children, and death in 1807, Bronson, J., held the will had been revoked by implication of law, and ordered a new trial. On such new trial, proof, inter alia, was offered that the testator was seized of other real estate besides the premises in question, of the value of $4,000 in the whole, but this, with other evidence, was excluded and such exclusion was affirmed. Havens v. Van Den Burgh, 1 Denio, 27, 31, 32. Revocation in such circumstances works no hardship. It brings about a descent and distribution under the just and politic rules prescribed for intestacy and aimed for the care and protection of children.

Under the prohibition of our statute, therefore, proof of increased property after the making of the will cannot avail to repeal the statutory rule to revoke a disposing testament not being made in view of marriage and parenthood, with no provision in the will, or out of it, looking to such duties. The surrogate, therefore, rightly denied the appellant's motion.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.

---

### WENZEL v. PATRICK RYAN CONST. CORPORATION.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

1. MASTER AND SERVANT ☞252—INJURY TO SERVANT—NOTICE UNDER EMPLOYERS' LIABILITY LAW—SUFFICIENCY.

A notice, served by plaintiff on her intestate's employer, was sufficient as a notice of the time, place, and cause of injury, under the employers' liability provisions of the Labor Law (Consol. Laws c. 31, §§ 200–204), where it stated that the injury occurred June 17, 1913, on a particular track on which defendant's cars and engines were being operated, that the intestate was crushed between two cars while coupling them, because of the temporary use of a chain coupling, instead of a rigid bar, which would have prevented the cars from coming together and causing the injury, and that the injury was due in part to the action of defendant's superintendent in causing the chain to be used.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. ☞252.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

2. MASTER AND SERVANT ⬅240—INJURY TO SERVANT—CONTRIBUTORY NEGLI-GENCE.

Where a brakeman, employed on a train used in drawing materials for making concrete, acquiesced in the substitution of a chain as a coupling between the cars for a bar which was being repaired, and while between the cars signaled the engineer, who was governed by his directions, to back the engine, whereby he was crushed between the cars and killed, he was guilty of contributory negligence, barring recovery for his death, regardless of whether defendant was negligent in furnishing the chain and directing its use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 751–756; Dec. Dig. ⬅240.]

3. TRIAL ⬅141—DIRECTING VERDICT—UNDISPUTED EVIDENCE.

Where, in an action for the death of an employé, the uncontradicted evidence showed that he was guilty of contributory negligence, there was no question for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. ⬅141.]

Appeal from Trial Term, Kings County.

Action by Florence Wenzel, as administratrix of William Wenzel, deceased, against the Patrick Ryan Construction Corporation. From judgment for plaintiff, and the denial of new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before JENKS, P. J., and THOMAS, MILLS, RICH, and PUTNAM, JJ.

E. Clyde Sherwood, of New York City, for appellant.

John M. Ward, of New York City (Arthur D. Kinney, of New York City, on the brief), for respondent.

RICH, J. This appeal is from a judgment, in favor of the plaintiff in an action to recover for the death of plaintiff's intestate, alleged to have been caused in consequence of the defendant's negligence, and from an order denying defendant's motion for a new trial.

The accident occurred on the Long Island side of the East River, where the defendant was doing the concrete work connected with the building of piers for a railroad bridge across the river. The deceased had been in defendant's employ about nine days preceding the accident, as brakeman on a train composed of an engine and one or two cars, used in drawing materials for making concrete. The track upon which the train was operated was in the form of a Y, the arms of which were from 30 to 50 feet long, one running to the bins containing material, the other to the mixer. The method of transferring the materials from the bins to the mixer was as follows:

In the mornings, two cars, the end one loaded, the one next to the engine empty, formed the first train; the cars were connected with each other and with the engine by a heavy piece of iron, from 3 to 3½ feet long, flattened at the ends, with holes at either end to receive the coupling pins. The engine would haul the two cars composing the first train to a point beyond the junction of the Y, the switch at that point was thrown, the loaded car was shunted or kicked on its way to the mixer, the empty car returned to the bins, where the car was

loaded with material, and thereafter during the day a loaded car was drawn to the switch, backed from there to the mixer, and the unloaded car standing there coupled to it. The engine then hauled the two cars to the switch, where they were uncoupled, the empty car kicked onto the inclined arm of the Y leading to the bins, over which it ran of its own momentum, while the loaded car was pushed to the mixer, where it was left, the engine returning to the bins for the empty car when loaded.

This had been the method of work during the time the deceased had been in defendant's employ. The cars were 8 feet wide, 9 feet high, and about 22 feet long. The decedent gave the signals or oral directions to the engineer, which controlled the movement of the train so far as going ahead or backing was concerned, and the engineer in such respects acted solely under his direction and in obedience to the signals or directions so given to him. On the morning of the accident it was found that one of the coupling irons needed repairing, and it was sent to the blacksmith shop for that purpose. Oakley, defendant's concrete foreman, whose duty it was, among other things, to attend to the loading, unloading, and the movement of the cars between the bins and mixer, testified that he asked Sapp, defendant's assistant superintendent, whether he should shut down and wait for the coupling iron, or put a chain on, and was told, "You can use a chain, if you are careful." Thereupon the deceased assisted Oakley in connecting the cars with a chain, and, after Oakley had cautioned the engineer to use care, the train proceeded. The train reached the switch with the loaded car next to the engine, where it came to a full stop. The deceased went in between the two cars, in which position he could not see or be seen by the engineer, in order to uncouple them, so that the empty car could be kicked back to the bins; and while in that place the engineer backed the train and the deceased was crushed between the two cars. The engineer and a young person who was on the empty car both testify that the deceased gave direction for the train to back.

The plaintiff's contention is that the chain provided was not a safe, suitable, or proper appliance, in view of the known use to which it was to be put and the known manner in which the work was being done. No question as to its being suitable or safe as a chain, or mere coupling, is raised; but the plaintiff invokes the rule declared by this court in Lipstein v. Provident Loan Society, 154 App. Div. 732, 739, 139 N. Y. Supp. 799, and followed in Kerwin v. Long Island Railroad Co., 157 App. Div. 898, 142 N. Y. Supp. 1125, that the fact that an appliance used was sound and mechanically perfect, viewed as an appliance apart from the manner of its user, does not relieve a defendant from liability, if in fact it was not suitable and safe in view of the use to which it was applied, considering reasonable safety to those obliged to use it.

The learned trial court submitted three questions to the jury: First, whether the chain which was being used at the time of the accident was a reasonably safe and suitable appliance for fastening the cars together; second, whether its user was negligently directed by a super-

intendent or employé of the defendant exercising control and authority; and, third, whether the deceased assumed the risk of its use, or was chargeable with contributory negligence in its user. These questions were resolved in favor of the plaintiff, and a verdict rendered accordingly.

[1] The complaint alleged a cause of action both at common law and under the statute. The answer admits service of the notice, but denies its sufficiency "as a notice of the time, place, and cause of injury under the employers' liability provisions of the Labor Law." After resting her case the plaintiff offered the notice in evidence, pursuant to the suggestion of the court that the answer simply admitted its receipt, which was objected to upon the ground that the stated "failure to promulgate rules and regulations, to give a warning, and the charge of negligence in regard to employing an incompetent engineer, are inadmissible under the Employers' Liability Act." The objection was overruled and the notice received in evidence, the court saying:

"They have not put in a bit of testimony in regard to that. I will hold this case down to the point they claim here in regard to the alleged defect of coupling, and the action of the alleged superintendent. That is all they can go to the jury on. I will admit it for that purpose, and give you an exception."

The case was accordingly submitted as one arising under the statute. The defendant now contends that this exception presents reversible error, arguing that the notice simply states common-law grounds of negligence, with the single exception of a general allegation that the injuries were caused by "the negligence of the person or persons then and there intrusted by you and charged with and exercising the duties of superintendence over the work performed by my said husband," which it is insisted is insufficient, and its admission as a notice given to create a statutory liability consequently incompetent. No objection was taken by answer or during the trial to the sufficiency or competency of the notice upon the grounds now argued. The defendant was fully and specifically apprised by plaintiff's notice that the time of her intestate's injury was June 17, 1913; the place, the track upon which defendant's cars and engine (used in its work in connection with the construction of the bridge being built from Astoria across Hell Gate, for carrying stone and cement from a hopper, on the east bank of the river) were being operated at a point on the northeasterly side of the line of the bridge, between Van Alst avenue on the southeast and the river on the northwest; the cause, being crushed between two cars while engaged in uncoupling them, because of the temporary use of a chain coupling, instead of a rigid bar, which would have prevented the cars from coming together in such a way as to cause the injury, and that at least one of the negligent acts alleged, upon which liability was predicated, was that of superintendence. This was all that the statute required, and I think the contention is without merit.

[2] The appellant further contends that there was no proof warranting the finding that the chain used was not a reasonably safe appliance, when properly and carefully used, and that, if the proof is sufficient to warrant such a finding, it necessarily establishes that the

decedent, in directing the engineer to back the train while he was between the cars, was guilty of contributory negligence, and that its exception to the refusal of the court to nonsuit presents reversible error. To meet this contention, the respondent argues that the chain furnished was a defect in the condition of the plant under the provisions of subdivision 1 of the Employers' Liability Act, and that, in connection with the negligent act of superintendence, establishes the liability of the defendant under said statute. This argument overlooks the fact that liability arises only when the injured employé "is himself in the exercise of due care and diligence at the time" of his injury. It is undisputed that the deceased was the person in charge of the movements of the train, and that the engineer was governed by his directions and signals in its operation. He assisted in coupling the cars together with the chain just before they were moved, and with knowledge of the obvious fact that the chain would not hold the cars apart if the engine was backed, and that they would have to be uncoupled in order to follow the usual procedure at the switch, of kicking the empty cars to the bins, assisted in preparing and used the appliance without protest, and on reaching the switch went between the cars, and while in that position directed the engineer to back the train. This direction caused the injury, and deceased is himself responsible for the consequences of that direction.

The chain coupling was perfectly safe in all the movements of the train, except under the circumstances in which this accident occurred. Under the system in use by the defendant, the backing of the train became necessary to kick the empty cars from the switch to the bins, and it was necessary that they should be first uncoupled from the loaded cars. I think the evidence conclusively establishes that it was not only unnecessary for the decedent to have remained between the cars when directing the engineer to back up, but exceedingly and manifestly careless. The cause of the accident was not a defect or insufficiency in the chain, or in its careful and proper use, but resulted from the unnecessary and careless manner in which the deceased endeavored to uncouple the cars. If the conditions and manner of operating the train were such as to charge the defendant with negligence in furnishing the chain and directing its use, the decedent was plainly guilty of contributory negligence, for he possessed all the knowledge that his employer had. Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56.

[3] The evidence in this respect being uncontradicted, the question presented was one of law. Seyford v. Southern Pacific Company, 159 App. Div. 870, 874, 145 N. Y. Supp. 22. As the uncontroverted facts preclude a recovery, the complaint should be dismissed on the merits.

Judgment and order reversed, with costs, and the complaint dismissed on the merits, with costs. All concur.