## MARUS v. CENTRAL R. CO. OF NEW JERSEY.

(Supreme Court, Appellate Division, Second Department. November 1, 1915.)

1. MASTER AND SERVANT ☜285—INJURY TO SERVANT—RAILROADS—LOW BRIDGE—EVIDENCE.

In an action for the death of a brakeman, evidence *held* sufficient to go to the jury on the question whether he was killed by striking a low bridge over the track while on top of the train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. ☜285.]

2. NEGLIGENCE ☜136—EVIDENCE—SUFFICIENCY.

While in civil cases the inference of liability must be stronger than an inference to the contrary exempting from liability, yet the inference for liability need not be exclusive, and if there is room for legitimate inference of fact the question is for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ☜136.]

3. MASTER AND SERVANT ☜137—INJURY TO SERVANT—RAILROAD—LOW BRIDGE—WARNING.

It is the common-law duty of a railroad to give some warning to brakemen of a low bridge which the train is approaching.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. ☜137.]

4. MASTER AND SERVANT ☜286—INJURY TO SERVANT—RAILROADS—TELL-TALES.

In an action against a railroad for the death of a brakeman, where it is shown that a telltale was within 247 feet of a low bridge, and that the train was moving 25 miles an hour, it was a question for the jury whether the telltale was so near the bridge that reasonable care was not exercised to protect brakemen on the train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☜286.]

5. MASTER AND SERVANT ☜289—INJURY TO SERVANT—ASSUMPTION OF RISK.

In an action for the death of a brakeman, killed by striking a low bridge while on top of the train, evidence *held* sufficient to go to the jury whether he should have known that the telltale was too near the bridge to give adequate warning.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ☜289.]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. MASTER AND SERVANT &—286—INJURY TO SERVANT—NEGLIGENCE OF FEL-
   LOW SERVANT.

    In an action for death of a brakeman, killed by striking a low bridge
while on top of train, evidence *held* insufficient to go to the jury on the
question whether the engineer was negligent in failing to give a signal of
the approach to the bridge.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec.
Dig. &—286.]

Appeal from Trial Term, Westchester County.

Action by Francesco Marus, as administrator, etc., of Louis Marus,
deceased, against the Central Railroad Company of New Jersey, for
death of deceased. Judgment for plaintiff, and defendant appeals.
Reversed.

Argued before CARR, STAPLETON, MILLS, RICH, and PUT-
NAM, JJ.

    Robert Thorne, of New York City, for appellant.
    Sydney A. Syme, of Mt. Vernon, for respondent.

CARR, J.    The defendant appeals from a judgment in an action
to recover damages for the death of the plaintiff's intestate through
the alleged negligence of the defendant, his master. The action was
brought under the federal Liability Act. Act April 22, 1908, c. 149,
35 Stat. 65 (U. S. Comp. St. 1913, §§ 8657–8665). The verdict was
$6,000. A motion for a new trial was denied, and the order is likewise
brought up for review. The evidence in the case is very short; in
fact, the respondent's brief exceeds it in extent. The contentions of
the appellant are as follows: (a) There was no proof of negligence
on the part of the defendant. (b) There was an assumption of risk
by the decedent as a matter of law. (c) There was an erroneous sub-
mission to the jury of the question of the negligence of a fellow serv-
ant.

The decedent was a brakeman in the service of the defendant. The
accident happened in the state of New Jersey in April, 1913, near the
city of Elizabeth, shortly after sunset, about 7 o'clock. The decedent
was at work as head brakeman on a fast freight train of more than
30 cars. This train was going from Jersey City to Allentown, Pa.
On its route it stopped at a place called Elizabethport to pick up addi-
tional cars; then it proceeded on a downgrade to Elizabeth, near
which place the tracks ran under a "low bridge," the surface of which
was used by the Pennsylvania Railroad Company. The plaintiff claims
that because of defective "telltales" maintained by the defendant, and
through a failure of the engineer to warn him, the decedent came in
contact with the overhead bridge and lost his life. The defendant of-
fered practically no evidence, and relies here, as at the trial, upon the
claimed insufficiency of the plaintiff's case. It appears that there had
been a previous trial, and a verdict for the plaintiff was set aside. The
respondent urges here that he made a better case upon the new trial,
through additional evidence and the submission of an additional ground
of liability to the jury.

[1] No one saw the accident. When the train left Elizabethport, after taking up additional cars, the decedent boarded the rear freight car and went to the top. It was his duty to walk forward to the cab of the engine and inspect, and adjust if necessary, the air brake contrivances, hose connections, and retainers. These retainers were located near the brakes, and to inspect and adjust them it was necessary to take a stooping position. The last time the decedent was seen alive by anybody was when he was coming forward in the direction of the engine about a distance of 800 to 1,000 feet from the low bridge at Elizabeth, towards which the train was running at the rate of 25 miles an hour. The engineer, Montgomery, looking backward, saw him coming with a lighted lamp. There was a "telltale" indicator over the tracks on the Elizabethport side, just 247 feet from the bridge. The clearance between the top of the cars and the under surface of the bridge was estimated at from 2 to 4 feet. After the train passed under the bridge and had gone about 55 miles, the decedent was missed. He could not be found upon the train. His lamp was found broken upon the top of the coal in the tender. A telegram was sent back to Elizabeth. One of the defendant's employés went back upon a hand car and found the decedent's body *under* the bridge, near the track upon which the train had passed, about three-fourths of the distance under the bridge. There was an injury to the decedent's skull, on the back of the head, over the ear, and wounds upon the arms. The man who found the body was the defendant's servant, Galvin, and his short testimony is all that we have on this point.

The theory of the plaintiff is that the nature of the injuries, and the place where the body was found, indicate that the decedent was struck by the overhead bridge plate, before he had time to secure a position of absolute safety, or at least that the jury was entitled so to infer from all the circumstances. The respondent cites Harrison v. N. Y. C. & H. R. R. R. Co., 195 N. Y. 86, 87 N. E. 802. That case, however, is not exactly the same, for there was proof there of marks on the side of the bridge indicating that it had been recently struck by some object. Here the case is silent as to any marks.

[2] The appellant contends that the evidence is too indefinite to enable the jury to do anything more than speculate as to the cause of the decedent's death. It urges that the cause may, just as well, have been that the decedent crouched down to avoid the bridge, and had raised his head before the bridge was cleared, or that he had slipped and fallen on the coal on the tender, and struck his head on the tender or a rail of the track when he fell to the ground. The respondent's suggestion is that the decedent was probably inspecting the retainer on the adjoining freight car in a stooping position as the train met the bridge, and was struck by the overhead plate, which ran through the bridge on its under surface, and that his body fell off the car in a second or so after the contact. It seems to me that, while the question is not free from doubt, there was a question of fact for the jury as to all of these contentions. If there was room for a legitimate inference of fact, it was for the jury to draw it. While it is necessary, in a civil case, that the inference of liability should be stronger or more probable than an inference exempting from liability, yet it is not re-

quired that an inference supporting liability should be necessarily exclusive.

[3] This brings us to the consideration of the question of negligence of the decedent. The plaintiff contends there was a "defect" in the defendant's appliances, in that the "telltale" was located too near the track to give "adequate and timely warning" of the approach of the train to the bridge. There was no dispute that the "telltale" was only 247 feet away from the bridge itself. This meant simply a space of 7 seconds of time on a train running 25 miles an hour. Both parties to this appeal cite a "low bridge" case in the Court of Appeals. The respondent cites Wallace v. C. V. R. R. Co., 138 N. Y. 302, 33 N. E. 1069. The appellant urges Harrison v. N. Y. C. & H. R. R. R. Co., 195 N. Y. 86, 87 N. E. 802. In both of these cases, the accidents happened in this state, and the railroad companies were governed by a specific statute as to the erection and maintenance of proper "telltales." Chapter 439 of Laws of 1884. Here, however, the accident happened in the state of New Jersey. There is no proof as to any statute of that state; hence we must rest entirely upon the common-law duty of the defendant towards its servants.

[4] The defendant's counsel concedes in his brief that the situation was one of grave danger to the brakemen of its trains passing under this bridge, and required some provision for their protection; but, as the defendant had made such provision by erecting the telltale, it was not liable for an error of judgment in the location of the appliance. It cites Pearsall v. N. Y. C. & H. R. R. R. Co., 189 N. Y. 474, 82 N. E. 752; Sisco v. L. & H. R. R. Co., 145 N. Y. 296, 39 N. E. 958, in support of its contention. Concededly, it was not the duty of the defendant to use the best known appliances; but it was its duty to use reasonable care in supplying and maintaining the appliances which it did use. I think it was the common-law duty of the defendant to provide some kind of warning to its brakemen, either by general rules as to signals or by appliances. Here it chose the latter method, and the sufficiency of the method, viewed in the light of reasonable care, was a question for the jury. The appliance, if located too near the bridge, was "defective," within the rule of Lipstein v. Provident Loan Society, 154 App. Div. 732, 139 N. Y. Supp. 799, and Sullivan v. Greenhut-Siegel-Cooper Co., 155 App. Div. 391, 140 N. Y. Supp. 263. I think this question was submitted properly to the jury.

[5] The appellant urges that it was error to submit to the jury the question of assumption of risk by the decedent. If this question should have gone to the jury at all, the manner in which it was submitted is unexceptionable. While the evidence shows that the decedent had been employed by the defendant as a fireman and brakeman for a year, it appears, also, that he had made only from 7 to 10 trips on this branch of the road, and that the very time of the accident was the first time he had ever been on the top of the train when it passed under the bridge. On all the few previous trips, he had got to the engine cab before the bridge was reached. Did he know, or should he have known, the distance of the "telltale" from the bridge? It was the duty of the trial court to submit this question to the jury under the proofs in this case.

[6] The court, however, submitted to the jury a question whether the engineer of the train was negligent in not signaling with the engine whistle as the train neared the bridge. There was no rule of the company requiring such signals. Was it imputable negligence upon the part of the engineer not to give them of his own volition? The engineer, Montgomery, testified that he sometimes "tooted" his whistle as the engine neared a low bridge, if he thought the brakeman might be unaware. He said he did this occasionally, not as general practice; perhaps he would not have occasion to do it twice in a year, and then only when he thought that he noticed that the brakeman was unconscious at the moment of the situation. The fireman, Stegeman, testified that he had noticed that on occasions when they had a "green brakeman, a man that did not know the road, Mr. Montgomery always gives them warning if he sees them on top of the train." Stegeman testified that he had noticed other engineers do the same thing. The respondent contends that the decedent had the right to rely upon a whistle warning from Montgomery. The proof is that he never before received one from him. We cannot agree with the contention of the respondent that this point is governed by Curran v. Lake Champlain & M. R. R. Co., 211 N. Y. 60, 105 N. E. 105, for there the practice of signaling relied upon was uniform. Thus, as it appears, we think it was error to submit to the jury any question of negligence on the part of Montgomery.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.