MAX SCHEIN, Plaintiff, *v.* JACOB FEDER, Defendant.

City Court of New York, Bronx County, March 18, 1935.

*Reuben Weinberg*, for the plaintiff.

*Andrew E. Delaney*, for the defendant.

DONNELLY, J. This action is brought under the Employers' Liability Law to recover for personal injuries sustained by plaintiff, who, while he was in defendant's employ as a butcher, cut the thumb of his left hand. The accident happened while plaintiff was cutting a shoulder bone of beef which was held against a chuck pin that had been driven into the chopping block. The pin came out of the block and the saw which plaintiff was using slipped, with the resultant injury for which he sues.

It was established by the evidence that at the time of the accident the defendant had not complied with the Workmen's Compensation Law in that he had failed to secure compensation for his employees. By section 11 of the Workmen's Compensation Law it is provided, in substance, that if the employer fails to secure the payment of compensation for his injured employees, an employee who is injured may maintain an action for damages on account of such injury, and, in such an action, it shall not be necessary to plead or prove freedom from contributory negligence, nor may the defendant plead as a defense that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee. An injured employee who avails himself of the right given to him by the statute in question, is nevertheless bound to prove that the injury for which he sues was caused by the employer's negligence. (*Lindebauer* v. *Weiner*, 94 Misc. 612.)

Plaintiff has been a journeyman butcher for twelve years. At the time of the accident he had been working as a butcher for the defendant for three months. There was no evidence that at any time during the period for which plaintiff worked for the defendant the chuck pin had ever come out of the block while plaintiff was doing his work, nor was there any evidence to show that there was any defect in the pin itself or in the chopping block. Plaintiff testified that on more than one occasion he asked defendant to give him a machine to use in his work, but that the defendant refused to do so. A sample of the machine to which plaintiff referred was produced on the trial. It is a metal device shaped somewhat like

a triangle and it is clamped to the side of the chopping block. In the vacant triangular space of this device the shoulder bone may be placed while the butcher is sawing it. On cross-examination plaintiff testified that, even with this machine or device, if the one who was sawing a bone was not careful he would cut his hand. He also testified that in his work as a butcher he had used a chuck pin. As he has been a butcher for twelve years, it is fair to assume that the chuck pin had been used by him in other shops during that period. Defendant testified that he had the newer device in his shop which was available to plaintiff but that plaintiff did not use it. Let it be granted that this testimony by the defendant was not true. The fact remains that whether the chuck pin or the newer device were used, if the latter were not properly clamped to the block, it might easily be a source of danger to the butcher using it. And so with the chuck pin. A certain degree of care in the manner in which it was driven into the block was necessary.

The only question is, was the defendant negligent in not providing the newer device? I should say he was negligent, if it were shown that there was something defective in the chuck pin itself or in the block into which the pin is inserted. A causal connection must be shown between the defect and the injury. (*Schmidt* v. *Michel Brewing Co.*, 221 N. Y. 228, 231.) An employer does not owe his employee the legal duty of furnishing the best-known appliances in the conduct of his business in order to protect such employee against injury. He is only required to furnish such as are reasonably safe. The duty of the employer is discharged if he furnishes a tool reasonably safe and suitable, such as ordinarily used in the business, which is in good repair. (*Cleary* v. *Dietz Co.*, 222 N. Y. 126.) If at bar the chuck pin were shown to be in fact dangerous in its use beyond the reasonable necessities of the work, it could not as a matter of law be regarded as a proper device simply because others were using the same style of apparatus. (*Croghan* v. *Hedden Construction Co.*, 147 App. Div. 631, 634.) In *Kwiatkowski* v. *Nichols Copper Co.* (152 App. Div. 663) the action was brought under the Employers' Liability Act. While plaintiff, an employee in a factory, was starting a car used to move heavy materials, another car started, colliding with the end of an iron bar which plaintiff was using to push the car ahead, and his hand was crushed between the oncoming car and the end of the bar. It was contended that there was negligence on the part of the defendant in that it did not equip these cars or the rails of the track with safety appliances to prevent the possibility of their starting. But this, as the court held, assumed a duty on the part of the master to make the accident impossible, while the law only requires that he should

use reasonable care to provide reasonably safe tools and appliances as his common-law duty, while providing for defects in the ways, works and machinery under the Employers' Liability Act. The court also held that it is not a defect in a railroad track that it is constructed upon a slightly descending grade, nor can it be said to be a defect, within the meaning of the act, that a car designed merely for moving heavy bodies about a factory by the use of hand power, is not supplied with safety brakes and devices. The court said: " Being reasonably safe for the purpose for which they [the cars] were used, and not having any defects which are pointed out, it is plain that the court did not err in holding that there was a failure of proof in support of the allegations in this respect " (p. 666).

*Lipstein* v. *Provident Loan Society* (154 App. Div. 732); *Deegan* v. *Gutta Percha Mfg. Co.* (131 id. 101), and *Wiley* v. *Solvay Process Co.* (215 N. Y. 584) are cited by plaintiff's counsel in support of the proposition that an implement which is sound may nevertheless be found to be defective where it is not suitable for the use to which it is put. Each of these cases was decided upon a particular set of facts, in which it appeared that the implement itself that was used was without any defect, but that the circumstances in which it was employed presented a source of danger. In the *Lipstein* case an extension ladder used by the employee in cleaning electric fixtures suspended from the ceiling rested upon a smooth tile floor which at times was slippery. There was nothing at either end of the ladder to fasten it or to prevent it from slipping. On several previous occasions the foot of the ladder had slipped while plaintiff was using it. He had informed defendant's general manager of these occurrences and complained to him of the danger in the use of the ladder and asked to be furnished with a stepladder. In the *Deegan* case plaintiff's hand was caught between the rollers of a mill used for grinding rubber. It was held that there was a negligent failure to provide and maintain a shifter for stopping the rollers, and that had it existed plaintiff could have operated a shifter with his left hand after his right hand had been caught. The court said (p. 107): " The negligence as found was not in the maintenance of the machine in such a condition as permitted the right hand to be caught, but in not providing a proper apparatus whereby it could be stopped and the injury thus lessened. In other words, after the plaintiff, without fault on either side, came into a condition which, unless arrested, would and did result in greater injury to him, the defendant was found guilty of negligence in not affording him means to change that condition."

In the *Lipstein* case the ladder had slipped on a number of occasions prior to the accident. At bar there was no evidence that on

prior occasions the pin had come out of the chopping block, or that because of the condition of the block into which the pin had been driven it was apt to come out. In the *Deegan* case it is inferable that the operation of the machine was likely to cause injury unless great care was used. The court seems to have stressed the defendant's duty to provide means to lessen the injury. At bar there is no evidence to show that, had the newer device been used, there would have been no accident. Plaintiff himself admitted that there was danger in its use unless care was used. In *Wiley* v. *Solvay Process Co.* (*supra*) plaintiff was employed for eight months before the accident in packing barrels with baking soda and putting in and fastening the hoops of the barrels. It was the duty of the plaintiff to drive an ordinary wire nail through the hoop and barrel staves into each end of each piece of the barrel head. Where more than seven nails were required it was necessary for the plaintiff to make the additional holes in the hoop and his only means of doing so was by forcing the nails through the hoop as a part of driving them through the barrel staves into the ends of the pieces constituting the barrel head. He was not furnished with any tool, drill or punch to make the nail holes through the hoop. In driving the nails through the hoop they sometimes bent, and if they bent, they would then frequently fly from his fingers as they were struck by the hammer. He testified that he had not been at his work more than a day before he ascertained that nails would sometimes fly from his fingers when he attempted to drive them through the hoop and that he thought it was dangerous. Prior to the accident the plaintiff had injured his hands at different times in trying to drive nails through a hoop and at one time about four weeks before the accident a man was struck on the nose with a nail that so flew from a workman's fingers, and the plaintiff testified that he had seen others hit in the same way. A short time before the accident he was attempting to drive a nail through a hoop and the nail flew and the hammer struck his fingers. He testified that at that time he said to the assistant foreman then in charge of the work, " Why don't you furnish me a punch so I can make a hole before trying to drive a nail through." He further testified that the foreman " kind of laughed at me; he said there is no time for punching; go on with the work." He was not furnished with a punch. On the morning of the accident, soon after he commenced work, and while heading a barrel, he attempted to drive a nail through the hoop, and at the first blow from his hammer it bent and flew from his fingers and struck him in one of his eyes, destroying its sight (pp. 586–587). The court held (p. 588): " If the failure to furnish the punch was a defect in the condition of the

ways, works, machinery and plant of the defendant, the question whether the plaintiff assumed the risk of injury therefrom was properly left to the jury. (Labor Law, § 202.) " At bar, the action was tried before me without a jury.

Defendant's motions to dismiss the complaint and for a directed verdict in his favor are granted. Exception to plaintiff. Ten days' stay and thirty days to make and serve a case.